**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No. 6:23-cv-2473-JSS-DCI

ATLANTIC HOUSING PARTNERS
L.L.L.P., A FLORIDA LIMITED
LIABILITY          PARTNERSHIP;
CANTON CONSTRUCTION, LLC,
A FLORIDA LIMITED LIABILITY
CORPORATION;       CONCORD
MANAGEMENT, LTD., A FLORIDA
LIMITED   PARTNERSHIP;   THE
VENUE   AT   HERITAGE   OAKS
PARTNERS, LTD.,

      Plaintiffs,

v.

BREVARD COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF
FLORIDA,

      Defendant.

_____/

## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

     Plaintiffs, Atlantic Housing Partners, L.L.L.P. ("AHP"), Canton Construction,

LLC ("Canton"), Concord Management, Ltd. ("Concord"), and The Venue at

Heritage Oaks Partners, Ltd ("VHO"), by and through their undersigned attorneys,

and pursuant to Federal Rules of Civil Procedure 7, 8, 10, and 15, and this Court's

*Order* (Dkt. 34) entered on September 19, 2024, file their *Second Amended Complaint* against Defendant, Brevard County (the "County"), and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      AHP is a Florida limited liability partnership that conducts business in Florida.

2.      Canton is a Florida limited liability company that conducts business in Florida.

3.      Concord is a Florida limited partnership that conducts business in Florida.

4.      VHO is a Florida limited partnership that conducts business in Florida.

5.      Nonparty, Southern Affordable Service, Inc. ("SAS"), is a Florida not-for-profit corporation that conducts business in Florida.

6.      The County is a political subdivision of the State of Florida, is organized under the laws of the State of Florida, and is located in this District and this Division.

7.      This Court has subject-matter jurisdiction to adjudicate this action pursuant to 28 U.S.C. §§ 1331 and 1343. Also, this Court has supplemental jurisdiction over Plaintiffs' state-law claims set forth herein pursuant to 28 U.S.C. § 1367 because said claims are so related to Plaintiffs' federal-law claims set forth herein that they form part of the same case or controversy.

0909692\204789\14326180v1

8.     Venue is proper in this District as all acts giving rise to this action occurred in this District.

9.     All conditions precedent to this action (if any) have occurred or have been performed.

## GENERAL ALLEGATIONS

**A.     The Planned Development of the Property:**

10.     VHO was the contract purchaser of certain real property located within the City of West Melbourne and the County (Parcel ID 28-37-07-00-253) (the "Property").

11.     SAS is the general partner of the owner of the Property.

12.     VHO and AHP intended to develop the Property as "The Venue at Heritage Oaks", which was planned to be an affordable-housing development comprised of 105 multifamily dwelling units for rental (the "Development").

13.     The Property was appropriately-zoned for affordable, multifamily rental housing thereon.

14.     VHO and AHP intended to develop the Property under the Live Local Act, as codified by Florida Statutes § 166.04151(7).

15.     Canton was to construct the Development.

16.     Once the Development was completed, Concord was to manage the Development.

17.     VHO and AHP planned to fund a substantial portion of the Development with federal tax-exempt bond and tax credit resources allocated through the Brevard County Housing Finance Authority ("BCHFA") and Florida Housing Finance Corporation ("FHFC"), the use of which places restrictions on the eligibility requirements for the tenants in the Development.

**B.     The County's Arbitrary Denial of the Bond Financing for the Development Based upon the County's Application of the Policy:**

18.     On July 31, 2023, AHP submitted its application for tax-exempt bond financing for the Development to the BCHFA (the "Bond Financing").

19.     The Bond Financing was necessary for the planned Development on the Property.

20.     On October 25, 2023, the BCHFA held a public meeting for the purpose of receiving public input on the Bond Financing application (the "Community Meeting"). After the meeting, BCHFA recommended approval of the Bond Financing application.

21.     As a condition of the Bond Financing, a Land Use Restriction Agreement encumbering the Property would have required that a minimum of 20% of the apartment units be set aside and available only to households earning less than 50% of area median income or 40% of the units set aside and available only to households earning less than 60% of the area median income with the remaining 80% available to households earning less than 120% of area median income, for as

long as the financing is outstanding, or for a term of 15 years, or as long as a real estate tax exemption is available to the Development, whichever is longer. Additionally, the Live Local Act requires 40% of the apartment units be set aside and available to households earning less than 120% of area median income for a term of 30 years.  Finally, the Low Income Housing Tax Credits awarded by FHFC will provide that 100% of the units be available only to households earning less than 60% of the area median income when using Private Activity Multi-Family Mortgage Revenue Bonds Issued by the Local HFA, which is the BCHFA in this case.

22.    On December 5, 2023, the Brevard County Commission ("BCC") held a hearing on the Bond Financing application (the "BCC Hearing") as required by 26 U.S.C. §147(f) (the "Policy").

23.    The report published by the County's staff in advance of the BCC Hearing provided as follows:

a.    This issue will provide funds to finance the acquisition, construction, equipping and development of 105 rental housing units which will be available to Brevard County families of lower and moderate income. There is **no fiscal impact to the Board of County Commissioners or the Authority**. The County is **only authorizing the Housing Finance Authority to issue the bonds under the IRS requirements for tax exempt bonds and the County shall be indemnified** from the issuance of bonds and the Project. (emphasis added).

b. The County's outside bond counsel has reviewed the project and provided the following statement: "The resolution proposed to be adopted by the BOCC satisfies the pertinent federal and state law requirements and provides that neither the County nor any of the elected officials or staff of the County will have any obligation or liability, financial or otherwise, with respect to the Project or the Bonds.

24. At both the Community Meeting and the BCC Hearing, members of the public spoke in opposition to affordable multifamily rental housing.

25. A representative of AHP spoke during the hearing, but was limited to three minutes and not allowed to provide a response to those opposing the Bond Financing application.

26. Following the BCC Hearing, utilizing the Policy, the BCC voted to deny the Bond Financing application (the "Bond Denial").

27. The BCC did not base the Bond Denial on any legitimate nondiscriminatory reason.

**C.    Plaintiffs' Harm Caused by the County's Arbitrary Denial of the Bond Financing for the Development Based upon the County's Application of the Policy:**

28. The County's application of the Policy to arbitrarily deny the requested Bond Financing has altogether frustrated VHO's and AHP's efforts to develop the Development as the Bond Financing, which was necessary for the Property to be

0909692\204789\14326180v1

developed as a qualified affordable-housing development, expired on December 31, 2023.

29.    Canton was unable to construct the Development because of the County's application of the Policy to arbitrarily deny the requested Bond Financing.

30.    Concord was unable to manage the Development because of the County's application of the Policy to arbitrarily deny the requested Bond Financing.

31.    As a result of VHO's and AHP's inability to develop the Property, Canton, Concord, and SAS have not received the benefits of the various agreements that they entered into with respect to the proposed Development.

**D.    Affordable-Housing Shortage in the County, and Demographics in the County and West Melbourne:**

32.    In the County, there is a more-than 9,000-unit shortage of affordable housing according to the Federal Reserve Bank of Atlanta.

33.    Such a shortage is substantial and statistically significant.

34.    Black households comprise only 9% of the population in the County and 4% of the population in West Melbourne.

35.    While black households comprise approximately 9% of the County's population, 43% of those black households are in need of affordable housing.

36.    Conversely, white households comprise 80% of the population in the County and 79% of the population in West Melbourne.

0909692\204789\14326180v1

37.     While White households comprise approximately 80% of the County's population, only 27% of white households are in need of affordable housing.

**E.     The Development's Projected Demographics:**

38.     Based upon an analysis of the racial composition of other communities owned by Plaintiffs or affiliated companies thereof in the County, Black households would have accounted for approximately 35% of the households in the Development.

39.     Thus, the Development's projected population of Black households would have been nearly four times higher than the County's population of Black households.

40.     Also, the Development's projected population of Black households would have been nearly nine times higher than West Melbourne's population of Black households.

41.     Based upon an analysis of the racial composition of other communities owned by Plaintiffs or affiliated companies thereof in the County, White households would have accounted for approximately 45% of the households in the Development.

42.     Thus, the Development's projected population of White households would have been over 45% less than the County's population of White households.

8

43.     Also, the Development's projected population of White households would have been nearly 45% less than West Melbourne's population of White Households.

### COUNT I: ACTION FOR VIOLATION OF THE FEDERAL FAIR HOUSING ACT, 42 U.S.C. §§ 3604 AND 3613 (Segregative Effect)

44.     This is an action by Plaintiffs against the County for violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3604 and 3613.

45.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 43 hereof.

46.     A segregated housing pattern exists in West Melbourne in that while black households comprise 9% of the population in the County, they only comprise 4% of the population in West Melbourne.

47.     Black people, a class protected under the FHA, are adversely affected by said segregated housing pattern.

48.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has created, increased, reinforced, or perpetuated said segregated housing pattern by preventing the Development, which would have brought affordable, multifamily rental housing on the appropriately-zoned Property and decreased said segregated housing pattern

based upon the Development's projected demographics of Black and White households.

49.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy, as applied, has created, increased, reinforced, or perpetuated said segregated housing pattern.

50.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County made unavailable or denied dwellings to Black people.

51.     Accordingly, the County's arbitrary denial of the Bond Financing for the Development based upon the County's application of the Policy has caused a segregative effect in the County.

52.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County unlawfully obstructed VHO's and AHP's right and ability to develop and market the proposed Development, a multifamily affordable housing community.

53.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton was unable to construct the Development.

54.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Concord was unable to manage the Development.

55.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton, Concord, and SAS have not received the benefits of the various agreements that they entered into with respect to the proposed Development.

56.     As a result of the actions taken by the County, Plaintiffs have been injured.

57.     Plaintiffs are obligated to pay their undersigned attorneys a reasonable fee for their services rendered in this action, together with all costs associated therewith.

58.     Under 42 U.S.C. §3613, Plaintiffs have a cause of action against the County for violation of the Federal Fair Housing Act, for which Plaintiffs are entitled to actual damages, plus reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, Atlantic Housing Partners, L.L.L.P., Canton Construction, LLC, Concord Management, Ltd., and The Venue at Heritage Oaks Partners, Ltd, request that this Court enter a Final Judgment in Plaintiffs' favor and against Defendant, Brevard County, for actual damages, reasonable attorneys' fees,

taxable costs, and any other relief, including equitable relief, that this Court deems just and proper.

## COUNT II: ACTION FOR VIOLATION OF THE FEDERAL FAIR HOUSING ACT, 42 U.S.C. §§ 3604 AND 3613
### (Disparate Impact)

59.     This is an action by Plaintiffs against the County for violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3604 and 3613.

60.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 43 hereof.

61.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has disproportionately adversely impacted Black people within the market area of the Development who were qualified to rent affordable multifamily housing in a statistically imbalanced way by preventing the Development, which would have brought affordable, multifamily rental housing on the appropriately-zoned Property and increased housing opportunities for Black people based upon the Development's projected demographics of Black and White households.

62.     Consequently, the County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has made unavailable or denied housing options to Black people.

0909692\204789\14326180v1

63.    The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has made housing options significantly more restrictive for Black people than for White people.

64.    The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has adversely impacted Black people in a statistically imbalanced proportion to their White counterparts, which has made housing options significantly more restrictive for Black people than White people.

65.    The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy was unwarranted and, as applied, has the discriminatory effect of making housing options significantly more restrictive for Black people than White people.

66.    Accordingly, the County's arbitrary denial of the Bond Financing for the Development based upon the County's application of the Policy has caused a disparate impact on Black people.

67.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County unlawfully obstructed VHO's and AHP's right and ability to develop and market the proposed Development, a multifamily affordable housing community.

68.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton was unable to construct the Development.

69.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Concord was unable to manage the Development.

70.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton, Concord, and SAS have not received the benefits of the various agreements that they entered into with respect to the proposed Development.

71.    As a result of the actions taken by the County, Plaintiffs have been injured.

72.    Plaintiffs are obligated to pay their undersigned attorneys a reasonable fee for their services rendered in this action, together with all costs associated therewith.

73.    Under 42 U.S.C. §3613, Plaintiffs have a cause of action against the County for violation of the Federal Fair Housing Act, for which Plaintiffs are entitled to actual damages, plus reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, Atlantic Housing Partners, L.L.L.P., Canton Construction, LLC, Concord Management, Ltd., and The Venue at Heritage Oaks

Partners, Ltd, request that this Court enter a Final Judgment in Plaintiffs' favor and against Defendant, Brevard County, for actual damages, reasonable attorneys' fees, taxable costs, and any other relief, including equitable relief, that this Court deems just and proper.

## COUNT III: ACTION FOR VIOLATION OF THE FLORIDA FAIR HOUSING ACT, FLORIDA STATUTES §§ 760.23, 760.26, AND 760.35 (Segregative Effect)

74.     This is an action by Plaintiffs against the County for violation of the Florida Fair Housing Act, Florida Statutes §§ 760.23, 760.26, and 760.35.

75.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 43 hereof.

76.     A segregated housing pattern exists in West Melbourne in that while black households comprise 9% of the population in the County, they only comprise 4% of the population in West Melbourne.

77.     Black people, a class protected under the FHA, are adversely affected by said segregated housing pattern.

78.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has created, increased, reinforced, or perpetuated said segregated housing pattern by preventing the Development, which would have brought affordable, multifamily rental housing on the appropriately-zoned Property and decreased said segregated housing pattern

15

based upon the Development's projected demographics of Black and White households.

79.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy, as applied, has created, increased, reinforced, or perpetuated said segregated housing pattern.

80.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County made unavailable or denied dwellings to Black people.

81.     Accordingly, the County's arbitrary denial of the Bond Financing for the Development based upon the County's application of the Policy has caused a segregative effect in the County.

82.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County unlawfully obstructed VHO's and AHP's right and ability to develop and market the proposed Development, a multifamily affordable housing community.

83.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton was unable to construct the Development.

84.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Concord was unable to manage the Development.

85.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton, Concord, and SAS have not received the benefits of the various agreements that they entered into with respect to the proposed Development.

86.    As a result of the actions taken by the County, Plaintiffs have been injured.

87.    Plaintiffs are obligated to pay their undersigned attorneys a reasonable fee for their services rendered in this action, together with all costs associated therewith.

88.    Under Florida Statutes § 760.35, Plaintiffs have a cause of action against the County for violation of the Florida Fair Housing Act, for which Plaintiffs are entitled to actual damages, plus reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, Atlantic Housing Partners, L.L.L.P., Canton Construction, LLC, Concord Management, Ltd., and The Venue at Heritage Oaks Partners, Ltd, request that this Court enter a Final Judgment in Plaintiffs' favor and against Defendant, Brevard County, for actual damages, reasonable attorneys' fees,

taxable costs, and any other relief, including equitable relief, that this Court deems just and proper.

## COUNT IV: ACTION FOR VIOLATION OF THE FLORIDA FAIR HOUSING ACT, FLORIDA STATUTES §§ 760.23, 760.26, AND 760.35 (Disparate Impact)

89.   This is an action by Plaintiffs against the County for violation of the Florida Fair Housing Act, Florida Statutes §§ 760.23, 760.26, and 760.35.

90.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 43 hereof.

91.   The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has disproportionately adversely impacted Black people within the market area of the Development who were qualified to rent affordable multifamily housing in a statistically imbalanced way by preventing the Development, which would have brought affordable, multifamily rental housing on the appropriately-zoned Property and increased housing opportunities for Black people based upon the Development's projected demographics of Black and White households.

92.   Consequently, the County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has made unavailable or denied housing options to Black people.

0909692\204789\14326180v1

93.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has made housing options significantly more restrictive for Black people than for White people.

94.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy has adversely impacted Black people in a statistically imbalanced proportion to their White counterparts, which has made housing options significantly more restrictive for Black people than White people.

95.     The County's arbitrary and unwarranted denial of the Bond Financing for the Development based upon the County's application of the Policy was unwarranted and, as applied, has the discriminatory effect of making housing options significantly more restrictive for Black people than White people.

96.     Accordingly, the County's arbitrary denial of the Bond Financing for the Development based upon the County's application of the Policy has caused a disparate impact on Black people.

97.     By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, the County unlawfully obstructed VHO's and AHP's right and ability to develop and market the proposed Development, a multifamily affordable housing community.

98.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton was unable to construct the Development.

99.    By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Concord was unable to manage the Development.

100.   By applying the Policy to deny the approval of the Bond Financing and, consequently, preventing the Development, Canton, Concord, and SAS have not received the benefits of the various agreements that they entered into with respect to the proposed Development.

101.   As a result of the actions taken by the County, Plaintiffs have been injured.

102.   Plaintiffs are obligated to pay their undersigned attorneys a reasonable fee for their services rendered in this action, together with all costs associated therewith.

103.   Under Florida Statutes § 760.35, Plaintiffs have a cause of action against the County for violation of the Florida Fair Housing Act, for which Plaintiffs are entitled to actual damages, plus reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, Atlantic Housing Partners, L.L.L.P., Canton Construction, LLC, Concord Management, Ltd., and The Venue at Heritage Oaks

Partners, Ltd, request that this Court enter a Final Judgment in Plaintiffs' favor and against Defendant, Brevard County, for actual damages, reasonable attorneys' fees, taxable costs, and any other relief, including equitable relief, that this Court deems just and proper.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

Filed this 18th day of October 2024.

> */s/ Rebecca E. Rhoden*
> **Rebecca E. Rhoden**
> Florida Bar No. 0019148
> **LOWNDES, DROSDICK, DOSTER,**
> **KANTOR & REED, P.A.**
> 215 North Eola Drive
> Post Office Box 2809
> Orlando, Florida 32802-2809
> Telephone: (407) 843-4600
> rebecca.rhoden@lowndes-law.com
> courtnay.holt@lowndes-law.com
> litcontrol@lowndes-law.com
>
> *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of October 2024, a true and correct copy of the foregoing was electronically filed with this Court and served on all attorneys of record.

> */s/ Rebecca E. Rhoden*
> **Rebecca E. Rhoden**

0909692\204789\14326180v1