thereby. The Issuer and the Borrower hereby further declare their understanding and intent that the benefit of such covenants touch and concern the Land by enhancing and increasing the enjoyment and use of the Land and the Project by Lower-Income Tenants and Eligible Persons, the intended beneficiaries of such covenants, reservations and restrictions, and by furthering the public purposes for which the Bonds were issued. The Borrower hereby expressly acknowledges that this Agreement is necessary to preserve the exclusion from gross income for federal income tax purposes of interest on the Bonds issued by the Issuer to finance the Loan and covenants and agrees that in connection with the acquisition, construction, ownership and operation of the Project, it shall and shall require any subsequent purchaser of the Project to fully comply with all terms and conditions of this Agreement.

**Section 11.    Uniformity; Common Plan**. The covenants, reservations and restrictions hereof shall apply uniformly to the entire Project.

**Section 12.    Remedies; Enforceability**. If a violation of any of the provisions hereof occurs or is attempted which is not cured within the applicable cure period, the Issuer and its successors and assigns may institute and prosecute any proceeding at law or in equity to abate, prevent or enjoin any such violation or attempted violation, to compel specific performance hereunder. The provisions hereof are imposed upon and made applicable to the Land and shall run with the Land and shall be enforceable against the Borrower or any other person or entity that has or had an ownership interest in the Project at the time of such violation or attempted violation. No delay in enforcing the provisions hereof as to any breach or violation shall impair, damage or waive the right of any party entitled to enforce the provisions hereof or to obtain relief against or recover for the continuation or repetition of such breach or violation or any similar breach or violation hereof at any later time or times.

**Section 13.    Indemnification**. The Borrower hereby covenants and agrees that it shall indemnify and hold harmless the Issuer, Brevard County, Florida and the Trustee and their respective officers, directors, officials, employees and agents from and against any and all claims by or on behalf of any person arising from any cause whatsoever in connection with the operation of the Project by the Borrower or the delivery of the Bonds to finance the Project, any and all claims arising from any act or omission of the Borrower or any of its agents, contractors, servants, employees or licensees in connection with the Project or the delivery of the Bonds to finance the Project, and all costs, reasonable counsel fees, expenses or liabilities incurred in connection with any such claim or proceeding brought thereon; except that the Borrower shall not be required to indemnify any person for damages caused by the negligence or willful misconduct or breach of contract of such person or for losses relating to principal and interest. In the event that any action or proceeding is brought against the Issuer, Brevard County, Florida, the Trustee or any of their respective officers, directors, officials, employees or agents, with respect to which indemnity may be sought hereunder, the Borrower, upon written notice from the indemnified party (which notice shall be given in a timely manner so as not to impair Borrower's rights to defend), shall assume the investigation and defense thereof, including the employment of counsel reasonably acceptable to the indemnified party and the payment of all fees and expenses, including such fees and expenses on appeal and in bankruptcy proceedings, if any. The indemnified party shall have the right to employ separate counsel in any such action or proceedings and to participate in the defense thereof, but, unless such separate counsel is employed with the approval and consent of the Borrower, or because

11

EXHIBIT H.2

of a conflict of interest between the Borrower and the indemnified party or because the matter may involve a criminal charge, the Borrower shall not be required to pay the fees and expenses of such separate counsel. The Borrower agrees to execute any additional documents deemed necessary by the Issuer, Brevard County, Florida or the Trustee to evidence the indemnification provided for in this Section 13. At the request of the Issuer, the Borrower agrees, in addition to the above indemnification, to pay the reasonable costs and expenses of the attorney for the Issuer in connection with the action or proceeding giving rise to the indemnification.

The Borrower hereby further indemnifies, and agrees to defend and hold harmless, the Trustee, Brevard County, Florida, the Issuer, any member, officer, official or employee of the Trustee, Brevard County, Florida and the Issuer, and each Person, if any, who controls the Trustee, Brevard County, Florida and the Issuer, and any official thereof, within the meaning of Section 15 of the Securities Act of 1933, as amended, against any and all losses, claims, damages, liabilities or expenses whatsoever caused by any untrue or misleading statement, or alleged untrue or misleading statement, of a material fact made by Borrower contained in any preliminary official statement, official statement, private placement memorandum, or other offering or disclosure document relating to the Bonds ("Disclosure Statement") or the omission or alleged omission by Borrower of any material fact of any Disclosure Statement, necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading. Notwithstanding the foregoing, the Borrower shall have no indemnification obligation with respect to any statement or omission for which the indemnified party is responsible.

While the Borrower has possession of the Project, the Borrower also shall pay and discharge and shall indemnify and hold harmless the Issuer and the Trustee from (a) any lien or charge upon payments by the Borrower to the Issuer and the Trustee hereunder, and (b) any taxes (including, without limitation, all ad valorem taxes and sales taxes), assessments, impositions and other charges other than income and other similar taxes in respect of any portion of the Project. If any such claim is asserted, or any such lien or charge upon payments, or any such taxes, assessments, impositions or other charges other than income and other similar taxes, are sought to be imposed, the Issuer or the Trustee shall give prompt notice to the Borrower and the Borrower shall have the sole right and duty to assume, and will assume, the defense thereof, with full power to litigate, compromise or settle the same in its sole discretion. In such instance, the indemnified party shall have the right to employ separate counsel at the expense of the Borrower in any such action as aforesaid.

In addition thereto, the Borrower will pay upon demand all of the reasonable fees and expenses paid, including attorneys fees and expenses, or incurred by the Trustee, Brevard County, Florida and/or the Issuer in enforcing the provisions hereof, including such fees and expenses on appeal, if any.

This Section 13 shall survive termination of this Agreement, or in the case of the Trustee, its removal or replacement.

**Section 14.    Transfer of Project; Covenants to Run with the Land.** The Borrower covenants with respect to the Project as follows:

(a)     Except as specifically authorized pursuant and subject to the terms and provisions of the Loan Documents, the Borrower shall not (a) sell, lease, exchange, assign, convey, transfer or otherwise dispose (collectively, a "Disposition") of all or substantially all of the Project or (b) place any mortgage lien, assignment of leases and rents or security interests on or pertaining to the Project, without in each instance the prior written consent of the Issuer. The Issuer shall not unreasonably withhold, condition or delay its written consent to a Disposition, as long as the requirements of this Section 14 are fully satisfied. It is expressly agreed that, in connection with determining whether to grant or withhold such consent, the Issuer may (but is not obligated to), among other things:  (i) consider the creditworthiness of the party to whom such Disposition will be made (the "Proposed New Owner") and such party's management ability with respect to the Project; (ii) consider the compliance history of the Proposed New Owner with respect to any other multifamily projects owned by the Proposed New Owner; (iii) consider whether or not the security for repayment of the Loan and other payment obligations under the Financing Agreement and other Loan Documents, and the performance of the covenants and other obligations under this Agreement (without regard to whether the Bonds are outstanding) or the Issuer's ability to enforce its rights, remedies and recourses with respect to such security or performance will be impaired in any way or to any degree by the proposed Disposition; (iv) require that the Issuer be reimbursed for all reasonable costs and expenses incurred by the Issuer, to the extent applicable, in connection with investigating the creditworthiness and management ability of the party to whom such impaired by Disposition will be made in determining whether the Issuer's security will be the proposed Disposition; (v) require the payment of all payment obligations of the Borrower under the Financing Agreement, including but not limited to accrued obligations not yet payable and, in the event of a Disposition in connection with a redemption of the Bonds prior to the termination of the Qualified Project Period, an undertaking by the Proposed New Owner to pay the Issuer Fee for the balance of the Qualified Project Period in the manner and means satisfactory to the Issuer; (vi) require the payment of the Issuer's reasonable attorneys' fees and expenses in connection with such Disposition; (vii) require the express, unconditional assumption of all payment obligations and all performance obligations under this Agreement  and to the extent same  remain in effect, the Financing Agreement and any other document, agreement or instrument evidencing or securing the Borrower's obligations under the Financing Agreement by the party to whom such Disposition will be made (with or without the release of the transferor Borrower from liability for such obligations), which assumption shall be in form and substance satisfactory to the Issuer and its counsel, and require the recording of such assumption document; (viii) require the execution of modification agreements, supplemental mortgage documents, financing statements and such other documents, agreements and instruments as the Issuer or its counsel may reasonably require, and (ix) require endorsements to any existing Issuer's or Trustee's title insurance policies insuring the Issuer's or the Trustee's liens and security interests covering the Project. The Issuer may in its discretion, release the Borrower from liability under this Agreement without releasing the Borrower from liability under any other agreement relating to the Project and may limit any such release from liability to events and occurrences arising after such Disposition, whether or not the Issuer has knowledge of prior events or occurrences creating such liability at the time of the Disposition.

(b)     The restrictions contained in Section 14(a) shall not be applicable to any of the following:  (i) any sale, transfer, assignment, encumbrance or addition, deletion or exchange of interests in the Borrower or the Borrower's manager, including, but not limited to, the partnership interests of the Borrower, provided such sale, transfer, assignment, encumbrance or addition does not

constitute a change in ownership of the Project for federal income tax purposes which would adversely affect the exclusion from gross income of the Bonds, as certified in writing by the Borrower to the Issuer and the Trustee; (ii) grants of utility-related easements and governmental easements, approved by the Issuer and any other construction easement which may be consented to by the Issuer and service-related leases or easements, such as laundry service leases or television cable easements, over portions of the Project, provided, however, the same are granted in the ordinary course of business in connection with the operation of the Project as contemplated by this Agreement; (iii) leases of apartment units to tenants, including Lower-Income Tenants and Eligible Persons, in accordance with the requirements of this Agreement; (iv) any sale or conveyance to a condemning governmental authority as a direct result of a condemnation or a governmental taking or a threat thereof; (v) the placing of a subordinate mortgage lien, assignment of leases and rents or security interests on or pertaining to the Project if made expressly subject and subordinate to this Agreement and the Loan Documents and provided that such subordinate mortgage lien, assignment of leases and rents or security interests is permitted by the Mortgage; or (vi) any change in allocations or preferred return of capital, depreciation or losses or any final adjustment in capital accounts (all of which may be freely transferred or adjusted by the Borrower pursuant to the Borrower's creation documents), provided that such change does not result in a change in ownership of the Project for federal income tax purposes; provided, however, the Issuer may require the mortgagee or any person acquiring the Project through foreclosure or by deed in lieu of foreclosure to assume expressly and unconditionally all payment obligations (in the same manner as provided in the Financing Agreement with respect to the Borrower) and all performance obligations under this Agreement, and the Financing Agreement relating to the Project and any other document, agreement or instrument evidencing or securing the Borrower's obligations under the Financing Agreement by the mortgagee or person acquiring the Project, which assumption shall be in form and substance satisfactory to the Issuer and its counsel, and require the recording of such assumption document. Any transfer of the investment limited partner's interest in the Borrower or removal and replacement of the Borrower's general partner pursuant to the Borrower's partnership agreement shall not be considered a change in ownership under this section.

(c)     The covenants, reservations and restrictions set forth herein shall be deemed covenants running with the Land and, except as provided in Section 6 hereof, shall pass to and be binding upon the Borrower's assigns, and successors in title to the Land or the Project; provided, however, that upon the termination of this Agreement in accordance with the terms hereof, said covenants, reservations and restrictions shall expire. Except as provided in Section 6 hereof, each and every contract, deed or other instrument hereafter executed covering or conveying the Land or the Project or any portion thereof shall conclusively be held to have been executed, delivered and accepted subject to such covenants, reservations and restrictions, regardless of whether such covenants, reservations and restrictions are set forth in such contract, deed or other instruments. If a portion or portions of the Project are conveyed, all such covenants, reservations and restrictions shall run to each portion of the Project.

In connection with any Disposition under paragraph (a) above or any transfer or other action addressed in Section 14(b)(i) above other than a transfer of investment partnership interests, in addition to the Issuer and the Trustee shall be entitled to require the Borrower to cause an opinion of Qualified Tax Counsel to be delivered to them to the effect that the proposed transfer of the Project

will not adversely affect the exclusion of interest on the Bonds from the gross income of the holders thereof for federal income tax purposes.

**Section 15.** **Filing.** This Agreement shall be duly recorded in the office of the Clerk of Court for Brevard County within ten days following its execution.

**Section 16.** **Governing Law.** This Agreement shall be governed by the laws of the State of Florida, without regard to the principles of conflicts of laws. The venue for any proceeding hereunder shall be a court of appropriate jurisdiction in Brevard County.

**Section 17.** **Amendments.**

(a)   This Agreement shall not, except as may otherwise occur pursuant to Section 9 hereof, be amended, revised, or terminated except by a written instrument, executed by the parties hereto or their successors in title, and duly recorded in the office of the Clerk of Court of Brevard County.   Anything to the contrary notwithstanding, the parties hereby agree to amend this Agreement to the extent required in the opinion of Qualified Tax Counsel, in order for interest on the Bonds to remain exempt from federal income taxation under Section 103 of the Code. The Borrower agrees, from time to time, to take such other actions and steps necessary to comply, and to cause the Project to comply, with the requirements of Section 142(d) of the Code and to enter into modifications and amendments to this Agreement to the extent required by any interpretation of federal law, by any amendment to the Code or by any Regulation promulgated thereunder (and the parties hereto agree that this Agreement shall be deemed to be automatically amended to impose such requirements pending execution of any such amendment), in each case so that interest on the Bonds remains exempt from federal income taxes. If either the Borrower or the Issuer fails to perform its obligations under this clause (a) within a reasonable period of time after gaining actual knowledge of such failure, the Trustee shall be authorized by such other parties (and is hereby appointed as their respective true and lawful attorney-in-fact) to execute, deliver and record, on behalf of such other parties, as applicable, any such amendment; provided that the Trustee shall not take action pursuant to this sentence without first notifying the Borrower and the Issuer in writing of its intention to take such action and without first providing the Borrower or the Issuer, as applicable, an opportunity to comply with the requirements of this clause (a), and the Trustee is indemnified or provision for indemnity is provided, for any costs or fees incurred by the Trustee in connection therewith.

(b)   Subject in all respects to the other provisions of this Agreement and the Trust Indenture, the Issuer, the Trustee and the Borrower may from time to time enter into one or more amendments or supplements to this Agreement for any of the following purposes:

(i)   To correct or amplify the description of the Project;

(ii)   To evidence the succession of another person or entity to the Issuer, the Trustee or the Borrower and the agreement by any successor to perform the covenants of their predecessor;

15

(iii)    To make such changes to the covenants hereof to the extent required by Sections 9 and 17(a) hereof in order to maintain the exclusion from gross income for federal income tax purposes of interest on the Bonds;

(iv)    To cure any ambiguities, to correct or supplement any provisions of this Agreement which may be inconsistent with any other provision herein, or to make any other provision with respect to matters or questions arising under this Agreement, which will not be inconsistent with the provisions of this Agreement, provided that such action will not adversely affect the interests of the owners of the Bonds; or

(v)    Upon delivery of an opinion of Qualified Tax Counsel to the effect that such amendment or supplement will not adversely affect the exclusion from gross income for federal income tax purposes of interest on the Bonds, to amend the covenants of the Borrower hereunder to the extent consistent with any applicable amendment to the Code or Regulations.

**Section 18.**    **Notice**. All notices and other communications required or permitted under this Agreement must be in writing and shall be deemed to have been duly given (i) when delivered, if sent by registered or certified mail (return receipt requested), (ii) when delivered, if delivered personally, (iii) when transmitted, if sent by facsimile if a confirmation of transmission is produced by the sending machine (and a copy of each facsimile promptly shall be sent by first class United States mail, postage fully prepaid) or (iv) on the following Business Day, if sent by overnight mail or overnight courier, in each case to the parties at the following addresses (or at such other addresses that may be specified by like notice):

If to Issuer:          Brevard County Housing Finance Authority
                       4420 S. Washington Avenue
                       Titusville, Florida 32780
                       Attention: Angela Abbott, Esq.
                       Telephone: (321) 264-0334
                       Email: angelaabbott@cfl.rr.com

If to Trustee:         The Bank of New York Mellon
                         Trust Company, N.A.
                       4655 Salisbury Road, Suite 300
                       Jacksonville, Florida 32256
                       Attention: Lori Cardey
                       Email: Lori.Cardey@bnymellon.com
                       Telephone: (904) 645-1982

16

<table>
<tr><td>with a copy to:</td><td>Akerman LLP<br>50 N. Laura Street, Suite 3100<br>Jacksonville, Florida 32202<br>Attention: Peter Dame, Esq.<br>Email: peter.dame@akerman.com<br>Telephone: (904) 598-8676</td></tr>
<tr><td>If to Borrower:</td><td>The Venue at Heritage Oaks Partners, Ltd.<br>c/o Southern Affordable Services, Inc.<br>335 N. Knowles Avenue, Suite 101<br>Winter Park, Florida 32789<br>Attention: Jay P. Brock<br>Telephone: (407) 741-8682</td></tr>
<tr><td>With a copy to:</td><td>Atlantic Housing Partners, L.L.L.P.<br>c/o Canton Financial/Atlantic Housing<br>200 East Canton Avenue, Suite 102<br>Winter Park, Florida 32789<br>Attention: Tricia Doody<br>Telephone: 407-741-8530</td></tr>
<tr><td>And:</td><td>Nelson Mullins Broad and Cassel<br>390 N. Orange Avenue, Suite 1400<br>Orlando, Florida 32801<br>Attention: David F. Leon, Esq.<br>Telephone: (407) 839-4200</td></tr>
</table>

A duplicate copy of each notice, certificate or other communication given hereunder by either the Issuer or the Borrower to the others shall also be given to the Trustee.

**Section 19.    Severability**. If any provision hereof shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining portions hereof shall not in any way be affected or impaired thereby.

**Section 20.    Reserved**.

**Section 21.    Multiple Counterparts**. This Agreement may be simultaneously executed in multiple counterparts, all of which shall constitute one and the same instrument, and each of which shall be deemed to be an original.

**Section 22.    Negative Covenants**. During the Term of this Agreement, the Borrower shall not:

(a)    Except pursuant to the provisions of this Agreement, the Financing Agreement and the Mortgage, or except upon a sale or transfer of the Project in accordance with the terms of this Agreement, the Financing Agreement and the Mortgage, encumber any of the mortgaged property,

17

including the grant of commercial leases (other than for vending machines, coin operated laundry facilities and similar amenities functionally related and subordinate to the Project and granted in connection with the day to day operation of a senior living facility), or permit the conveyance, transfer or encumbrance of such property (except for such leases and for residential leases) except as otherwise provided herein. Nothing in this paragraph shall prohibit the granting of easements for the purpose of providing utility services (including cable television or private satellite television) to the Project.

    (b)    Demolish any part of the Project necessary for the operation thereof for its intended purposes or substantially subtract from any real or personal property of the Project; or

    (c)    Permit the use of the dwelling accommodations of the Project for any purpose except rental residences in compliance with Section 142(d) of the Code.

**Section 23.    Application of Insurance and Condemnation Proceeds**. If during the Term of this Agreement the Project is damaged or destroyed or if all or a portion thereof is taken through eminent domain proceedings, or under threat thereof, proceeds from insurance on the Project or any condemnation awards pertaining to such eminent domain proceedings shall be applied as provided in the Financing Agreement and the Mortgage.

**Section 24.    Compliance with the Act, Regulations Thereunder and Issuer Policy**. The Borrower will comply with the Act, with any regulations promulgated thereunder and with the policies of the Issuer which are consistent with the Loan Documents and the Borrower's Operating Agreement, of which the Borrower will be notified from time to time.

**Section 25.    Assignment**. The interest of the Issuer in this Agreement shall be assigned to the Trustee and the rights of the Issuer hereunder shall, if the Trustee so elects, be enforceable by the Trustee. Other than in connection with the enforceability of the Issuer's rights by the Trustee, the Issuer shall, notwithstanding such assignment, continue to provide all approvals, consents and related affirmative actions required of the Issuer hereunder. The Borrower's interest may be assigned as provided in the Financing Agreement.

**Section 26.    Reliance**. The Issuer and the Borrower hereby recognize and agree that the representations and covenants set forth herein may be relied upon by all persons interested in the legality and validity of the Bonds and in the exemption from federal income taxation of the interest on the Bonds. In performing their duties and obligations hereunder, the Issuer and the Trustee may rely upon statements and certificates of the Borrower, the Lower-Income Tenants, Eligible Persons and tenants of the Project that are believed to be genuine and to have been executed by the proper person or persons, and upon audits of the books and records of the Borrower pertaining to occupancy of the Project.

**Section 27.    Relationship with Loan Documents**. The terms, covenants and restrictions of this Agreement, other than those set forth in Sections 2, 3, 4, 6, 7, 9, 12, 13 and 22 hereof, are and shall at all times hereafter remain subject and subordinate, in all respects, to the liens, rights and interests created under the Financing Agreement and the Mortgage. Upon a conveyance or other transfer of title to the Project pursuant to a judicial foreclosure or deed in lieu of foreclosure under

the Mortgage, the person who acquires title to the Project pursuant to such foreclosure or deed in lieu of foreclosure (unless such person is the Borrower or an Affiliated Party to the Borrower, in which event this Agreement shall remain in full force and effect) shall acquire such title free and clear of the terms, covenants and restrictions of this Agreement. Notwithstanding any other provision of this Agreement to the contrary, all obligations of the Borrower under this Agreement for the payment of money and all claims for damages against the Borrower occasioned by breach or alleged breach by the Borrower of its obligations under this Agreement, including indemnification obligations, shall not be a lien on the Project and no person shall have the right to enforce such obligations other than directly against the Borrower as provided in Section 12 hereof. No subsequent owner of the Project shall be liable or obligated for the breach or default of any obligation of any prior owner under this Agreement, including but not limited to any payment or indemnification obligation, if such owner shall have taken title to the Project as a result of a foreclosure or deed in lieu of foreclosure, but such obligations shall be treated as personal to the person who was the owner at the time the default or breach was alleged to have occurred and such person shall remain liable for any and all damages occasioned thereby even after such person ceases to be the owner.

The Borrower warrants that it has not, and will not, execute any other agreement with provisions contradictory to, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations herein set forth and supersede any other requirements in conflict herewith, subject in all respects to the provisions of this Section 27.

IN WITNESS WHEREOF, the Issuer, the Trustee and the Borrower have caused this Agreement to be executed by their duly authorized representatives, all as of the date first above written.

**BREVARD COUNTY HOUSING
FINANCE AUTHORITY**

By: _____

Title:  Chairman

[SEAL]

Attest: _____
      Secretary-Treasurer

STATE OF FLORIDA
COUNTY OF BREVARD

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this _____ day of _____, 2023 by KAMRAN SARKARATI, Chairman of the BREVARD COUNTY HOUSING FINANCE AUTHORITY, on behalf of the authority.  He is personally known to me or has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(Serial number, if any)

STATE OF FLORIDA
COUNTY OF BREVARD

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this _____ day of _____, 2023 by BARRY FORBES, Secretary-Treasurer of the BREVARD COUNTY HOUSING FINANCE AUTHORITY, on behalf of the authority. She is personally known to me or has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(Serial number, if any)

S-1

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: _____

Lori Cardey, Vice President

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this ____ day of _____, 2023 by LORI CARDEY, Vice President of THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., on behalf of the association. She is personally known to me or has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(Serial number, if any)

S-2

**THE VENUE AT HERITAGE OAKS
PARTNERS, LTD.,** a Florida limited partnership

By:    Southern Affordable Services, Inc., a
       Florida not-for-profit corporation, its
       general partner

By: _____
       Jay P. Brock, Executive Vice
       President

Witness:_____
Printed Name:_____

Witness:_____
Printed Name:_____

STATE OF FLORIDA
COUNTY OF _____

    The foregoing instrument was acknowledged before me by means of ☐ physical presence or
☐ online notarization, this _____ day of _____, 2023 by Jay P. Brock, Executive Vice
President of SOUTHERN AFFORDABLE SERVICES, INC., a Florida not-for-profit corporation,
the general partner of THE VENUE AT HERITAGE OAKS PARTNERS, LTD., a Florida limited
partnership, on behalf of the corporation and partnership.  He is personally known to me or has
produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(Serial number, if any)

S-3

EXHIBIT "A"

LEGAL DESCRIPTION

(The Venue at Heritage Oaks

A-1

## EXHIBIT "B"

## <u>CERTIFICATION OF CONTINUING PROGRAM COMPLIANCE</u>

Witnessed that on this _____ day of _____ 20___ , the undersigned, having borrowed certain funds from the Brevard County Housing Finance Authority (the Authority) for the purpose of acquiring and constructing apartments, does hereby certify that such multifamily rental housing project is in continuing compliance with the Land Use Restriction Agreement executed by the undersigned and filed in the official public records of Brevard County, Florida (including the requirement that all units be and remain rental units), that Income Certifications have been submitted for each new Lower-Income Tenant in such multi-family rental housing project since the filing of the last such certification and that the same are true and correct to the best of the undersigned's knowledge and belief. As of the date of this certificate, the following percentages of completed residential units in the project are occupied by Lower-Income Tenants (as such term is defined in the Land Use Restriction Agreement), Eligible Persons, non-revenue units and vacant units.)

Total number of units available for occupancy as of _____ , 20 ___

|  | Percentage | Number |
|---|---|---|
| Lower-Income Tenants | | |
| Eligible Persons | | |

The Venue at Heritage Oaks Partners, Ltd.,
a Florida limited partnership, as Owner

By: Southern Affordable Services,
     Inc., its general partner

By: _____

B-1

## EXHIBIT "C"

## PROJECT AMENITIES

a.    **In addition to meeting all building code, Fair Housing Act, and Americans with Disabilities Act Requirements, the following items are required:**

- Air conditioning (window units are not allowed), in all units
- Dishwasher, in all new construction units
- Garbage Disposal, in all new construction units
- Cable TV Hook-Up, in all units
- At lease two full bathrooms in all 3 bedroom or larger new construction units
- At least 1 and ½ bathrooms (one full bath and one with at least a toilet and sink) in all new construction 2 bedroom units
- Minimum square footage requirements for all new construction units of 700 square feet (one bedroom), 925 square feet (two bedroom), 1100 square feet (three bedroom), and 1300 square feet (four bedroom or greater)
- Full sized appliances in all units
- Bathtub in at least one bathroom in new construction non-elderly units
- Exterior lighting for all buildings and parking areas
- Window Treatments (mini-blinds, curtains, vertical blinds) inside each unit [Identify treatment: _____]

b.    **The Borrower will also include the following:**

- 30 Year Expected Life Roofing on all Buildings
- Garbage Disposal
- Steel entry door frames
- Double compartment kitchen sink
- Laundry Hook-ups and space for washer/dryer inside each unit