## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Case No. 6:23-cv-2473-JSS-DCI

ATLANTIC HOUSING PARTNERS
L.L.L.P., a Florida limited liability
partnership; CANTON CONSTRUCTION,
LLC, a Florida limited liability corporation;
CONCORD MANAGEMENT, LTD., a
Florida limited partnership; and THE
VENUE AT HERITAGE OAKS
PARTNERS, LTD., a Florida limited
partnership,

       Plaintiffs,

v.

BREVARD COUNTY, a political
subdivision of the State of Florida,

       Defendant.

_____/

## PLAINTIFFS' RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFFS' FRCP 26 EXPERT WITNESS, DR. HANK FISHKIND (DKT. 54)

Plaintiffs, Atlantic Housing Partners L.L.L.P. ("AHP"), Canton Construction,

LLC, Concord Management, Ltd. ("Concord"), and The Venue at Heritage Oaks

Partners, Ltd., by and through their undersigned attorneys, and pursuant to Local

Rule 3.01, respond in opposition to Defendant, Brevard County's, *Motion in Limine*

0143012\206644\14841939v1

*to Exclude Testimony of Plaintiffs' FRCP 26 Expert Witness, Dr. Hank Fishkind* (Dkt. 54) (the "Motion") as follows:

## I. PERTINENT PROCEDURAL HISTORY

This Court extended the end of this case's discovery period from February 3, 2025, to March 1, 2025.[1] During and after this case's discovery period, Plaintiffs and Defendant have engaged in discovery by, *inter alia*, disclosing and exchanging reports of Plaintiffs' and Defendant's respective expert witnesses, and Plaintiffs taking the depositions of Defendant's expert witnesses.

Plaintiffs have retained Dr. Hank Fishkind as Plaintiffs' expert witness in this case to opine on, among other things, whether Defendant's actions resulted in illegal discrimination against racial minorities protected under the FHA.[2] In rendering his opinions in this case, Dr. Fishkind published his initial *Expert Report* dated September 12, 2024 ("Dr. Fishkind's Initial Report")[3], and his *Expert Rebuttal Report* dated January 21, 2025 ("Dr. Fishkind's Rebuttal Report")[4].

Defendant has retained Dr. Sean T. Malone as Defendant's expert witness in this case to review Dr. Fishkind's Initial Report. In rendering his opinions in this case, Dr. Malone published his *Rebuttal Report* dated November 29, 2024 ("Dr.

---

[1] *See* Dkt. 47
[2] *See* Dr. Fishkind's Initial Report, para. 1
[3] *See* Dkt. 50, pp. 39-95
[4] *See* Dkt. 50, pp. 96-128

2

Malone's Rebuttal Report")[5], and his *Supplemental Expert Report* dated March 11, 2025 ("Dr. Malone's Supplemental Report")[6].

## II. ARGUMENT

"The admission of expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). "Under Rule 702, a district court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony." *U.S. v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013). "This gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999)) (internal quotations omitted).

When reviewing *Daubert* challenges, courts must apply a three-prong test to determine whether experts' testimony should be barred:

> (1)  "The expert is qualified to testify competently regarding matters he intends to address;
>
> (2)  The methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

---

[5] *See* Dkt. 50, pp. 130-154
[6] *See* Dkt. 50, pp. 156-175

0143012\206644\14841939v1

(3)   The testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1291-92.

"The admissibility standard is a liberal one, and … the rejection of expert testimony is the <u>exception</u> rather than the rule." *United States v. Williams*, 684 Fed. Appx. 767, 779 (11th Cir. 2017) (quoting *United States v. Frazier*, 387 F. 3d 1244, 1258 (11th Cir. 2004)).

## A.   Defendant Fails to Establish that Dr. Fishkind's Opinions Are Unhelpful because They Are Purportedly Based upon Irrelevant Material.

Defendant first takes issue with Dr. Fishkind's expert opinions because Defendant purports that Dr. Fishkind's analysis was based upon the wrong proposed set-asides for affordable housing at the subject Development.[7] Defendant correctly alleges that in Plaintiffs' Bond Application to Defendant, 20% of the Development's units were set aside for affordable housing and 80% of the Development's units were set aside for market rate housing.[8] The following is the rental breakdown of the set-asides for affordable housing from the Bond Application[9]:

---

[7] *See* Dkt. 54, pp. 13-15
[8] *See* Dkt. 54, p. 14
[9] *See* Dkt. 54-1, p. 18

4

F. Breakdown of units by square footage and monthly rent charged. All units in the development must be listed INCLUDING all manager/employee units. Indicate manager/employee units with an asterisk.

| # Of Bedrooms/ Unit | # Of Baths Per Unit | Square Feet Per Unit | # Of Units Per Bedroom type | | % Of Area Median Income | Monthly Gross Rent for Set-Aside Units* | Less Utility Allowance (for HC Developments) | Net Rent for Set-Aside Units | Monthly Market Rent+ |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 720 | 20% Market | 13 50 | 20% Market | 20% $806.25 | $95.79 | $710.46 | $1479 |
| 2 | 2 | 968 | 20% Market | 5 21 | 20% Market | 20% $967.50 | $111.87 | $855.63 | $1699 |
| 3 | 3 | 1,137 | 20% Market | 3 9 | 20% Market | 20% $1,118.17 | $129.33 | $988.84 | $1849 |
| | | | | | | | | | |

* NOTE: For any Development anticipating the use of tax credits, gross rents include the rent *plus* the allowance for resident-paid utilities for set-aside units. These rents may not exceed the allowable rents for the chosen set-aside as shown on the applicable rent charts included in the Tax Credit Application Package. Rents will be capped based on set-aside chosen.
+ NOTE: Answer for market rate units only.

However, Defendant's argument is a red herring based upon the footnote to the foregoing breakdown[10], which provides as follows:

* NOTE: For any Development anticipating the use of tax credits, gross rents include the rent *plus* the allowance for resident-paid utilities for set-aside units. These rents may not exceed the allowable rents for the chosen set-aside as shown on the applicable rent charts included in the Tax Credit Application Package. Rents will be capped based on set-aside chosen.

(highlighting added). That is, Plaintiffs were prohibited from adjusting the amount of affordable rental units to <u>being less</u> than what was set aside in the Bond Application; however, as the foregoing footnote denotes, Plaintiffs were able to include even more affordable rental units if Plaintiffs applied for tax credits, which they did.

---

[10] *See* Dkt. 54-1, p. 18

When the tax credits for the Development were applied for, the affordable rental unit set-asides were adjusted to comport with the regulatory restrictions for the four-percent low-income housing tax credits.[11] The set-asides were adjusted to a 105-unit, rental apartment community, with apartments offered at below market rates: (a) 21 units affordable to households earning 30% of the area median income; (b) 53 units affordable at 60% AMI; and (c) 31 units affordable at 80% AMI.[12] The foregoing affordable rental unit breakdown is what Dr. Fishkind used in his analysis, which is an even more accurate unit mix of the Development than what was provided in the Bond Application to Defendant as that unit mix was outdated by the time that the tax credits for the Development were applied for and the set-asides were adjusted.[13]

Finally, just to ensure reliability and helpfulness for the jury, and to address Dr. Malone's rebuttal, Dr. Fishkind ran his analysis using the set-asides provided in the Bond Application in Dr. Fishkind's Rebuttal Report.[14] Even using the set-asides provided in the Bond Application, Dr. Fishkind's analysis showed a disparate impact.[15]

---

[11] See Dkt. 50, pp. 408:21-409:14
[12] See Dkt. 50, pp. 99, 115-16, 119 (paras. 78-80), 408:21-409:14
[13] See Dkt. 50, pp. 99, 115-16, 119 (paras. 78-80), 408:21-409:14
[14] See Dkt. 50, pp. 115-16, 119 (paras. 78-80)
[15] See Dkt. 50, pp. 115-16, 119 (paras. 78-80)

0143012\206644\14841939v1

Accordingly, Defendant's argument that Dr. Fishkind's opinions are unhelpful because he did not use the set-aside provided for in the Bond Application in Dr. Fishkind's analysis does not refute the helpfulness of Dr. Fishkind's opinions. Thus, this Court must deny the Motion on these grounds.

**B.     Defendant's Contention that Dr. Fishkind's Opinions Are Unhelpful and Unreliable because He Purportedly Did Not Use the Correct Comparator Is Factually Incorrect.**

In Sections (I)(A)(2) and (I)(B) of the Motion, Defendant advances a baseless argument that Dr. Fishkind arrived at an unreliable projected population of the Development by basing his opinions on dissimilar comparators and, consequently, all of Dr. Fishkind's opinions are purportedly unreliable or unhelpful.[16] Defendant, through Dr. Malone, argues that the only comparator that Dr. Fishkind could have used to project the racial composition of the Development was the racial composition of the Venue at Viera Senior Living Community because it was the only senior-restricted community of Plaintiffs in the relevant market area.[17] In Dr. Fishkind's analysis, he averaged each of Plaintiffs' four comparable communities in the relevant market to ascertain the projected racial composition of the Development.[18]

The issue over the proper comparators arises from the demographic composition of four communities of Plaintiffs in the relevant market area: (1)

---

[16] Dkt. 55, pp. 15-20
[17] *See* Dkt. 55, pp. 15-20; *see also* Dkt. 50, pp. 158-59
[18] *See* Doc. 50, pp. 122-25

0143012\206644\14841939v1

Wickham Club Apartments; (2) Malabar Cove Apartments; (3) Venue at Viera Senior Living Community; and (4) Hammock Harbor Apartment Homes (together, the "Communities").[19] In Dr. Malone's Rebuttal Report, he contends that the only comparable community to the Development was Venue at Viera Senior Living Community.[20] Dr. Malone contends that it is the only comparable community to the Development because it is the only community that is age restricted to 62 years' of age or older.[21]

Dr. Fishkind used the average demographics of the four Communities to arrive at his conclusion for the projected demographic composition of the Development.[22] Dr. Fishkind chose to use the average demographics of the four Communities because their renters all came from the same relevant market area that the Development's renters would come from.[23]

Also, Dr. Fishkind chose not to simply use the Venue at Viera Senior Living Community as the comparator (as Dr. Malone did) because although the Development and the Venue at Viera Senior Living Community was an age-restricted community, the restrictions were materially different. The Development was intended to satisfy the occupant requirements of the Housing for Older Persons

---

[19] *See* Doc. 50, pp. 46-48, 122-25
[20] *See* Dkt. 50, pp. 158-59
[21] *See* Dkt. 50, pp. 158-59
[22] *See* Doc. 50, pp. 46-48, 122-25
[23] *See* Doc. 50, pp. 46-48, 122-25

0143012\206644\14841939v1

Act.[24] That is, the Development was intended to be operated for persons who were fifty-five years of age or older, and at least eighty percent of the occupied units would be occupied by at least one person who was fifty-five years of age or older.[25] Whereas, Venue at Viera Senior Living Community had a age-restriction of 62 years' of age or older.[26]

Accordingly, Dr. Fishkind's use of the four Communities as comparators does not render Dr. Fishkind's opinions entirely unhelpful or unreliable. Defendant's and Dr. Malone's contention that Dr. Fishkind should have only used the Venue at Viera Senior Living Community as a comparator is a question for the trier of fact to decide; it is not a basis to exclude Dr. Fishkind's expert testimony under *Daubert*.

## C.     Dr. Malone's Expert Reports Have Not Established that Dr. Fishkind's Conclusions Are Unreliable.

In Section (I)(B)(2) of the Motion, Defendant rattles off five reasons why Dr. Fishkind's opinions are purportedly unreliable with little to no detail or analysis.[27] Each of Defendant's reasons are refuted by the record evidence or are more appropriate to confront Dr. Fishkind with during cross-examination; that is, none of Defendant's reasons support Defendant's requested relief in the Motion to exclude Dr. Fishkind's testimony under *Daubert*.

---

[24] *See* Doc. 50, pp. 317:22-318:6
[25] *See* Doc. 50, pp. 348:8-18; *see also* 42 U.S.C.A. § 3607(2)(C)(i)
[26] *See* Doc. 50, pp. 329:25-331:13
[27] *See* Dkt. 54, pp. 20-22

0143012\206644\14841939v1

**First**, Defendant contends that Dr. Fishkind engaged in "improper extrapolation of the dates", which, according to Defendant, "is purely subjective on [Dr. Fishkind's] part and is not based upon adequate, validated research."[28] Defendant arrives at the foregoing conclusion without pin-citing anything in Dr. Fishkind's or Dr. Malone's expert reports.[29] Nonetheless, Dr. Malone and Dr. Fishkind disagree about whether Dr. Fishkind properly applied the Chi-Square Test.[30] Dr. Fishkind provided his detailed calculations, and Dr. Malone disagrees with them.[31] Dr. Fishkind's analysis is based upon standard methods and is not speculative.[32] Defendant's assertion that Dr. Fishkind engaged in "improper extrapolation of the dates" can be addressed in cross-examination; it is not a basis for exclusion under *Daubert*.

**Second**, Defendant asserts that Dr. Fishkind's "regression analysis appear [sic] to be unsupported by the data contain in his report" and that Dr. Malone cannot replicate Dr. Fishkind's results or support the conclusions he drew.[33] Again, Defendant cites to nothing in the record to support Defendant's foregoing assertions.[34] Dr. Fishkind's expert reports meticulously explain his analysis and

---

[28] Dkt. 54, p. 20
[29] *See* Dkt. 54, p. 20
[30] *See* Dkt. 50, pp. 119-20
[31] *See* Dkt. 50, pp. 119-20
[32] *See* Dkt. 50, pp. 119-20
[33] *See* Dkt. 54, p. 21
[34] *See* Dkt. 54, p. 21

0143012\206644\14841939v1

provide the results of the same.[35] Dr. Fishkind produced his entire file (including his workbook – over 9000 pages) to Dr. Malone in discovery.[36] Dr. Malone literally analyzed Dr. Fishkind's data and specified his issues with the same in Dr. Malone's expert reports.[37] Dr. Fishkind disagrees with Dr. Malone's issues, but they nonetheless demonstrate that Dr. Malone had the data to analyze Dr. Fishkind's methodology. And because Dr. Malone had all of Dr. Fishkind's data and methodology, it is unfathomable for Defendant to suggest that Dr. Malone could not reproduce Dr. Fishkind's results; more than anything, this purported fact calls into question Dr. Malone's aptitude.

**Third**, Defendant attempts to fault Dr. Fishkind for using in his Rebuttal Report the methodology suggested by Dr. Malone in his Initial Report.[38] Dr. Fishkind demonstrated that both the methodology that Dr. Fishkind used in his Initial Report and the methodology that Dr. Fishkind used in his Rebuttal Report (i.e., the methodology that Dr. Malone suggested in his Initial Report) both produced favorable results for Plaintiffs' case and the same standard of error, which completely rebuts Dr. Malone's contentions.[39]

---

[35] See Dkt. 50, pp. 39-128, *passim*
[36] *See* Dkt. 54, p. 9
[37] *See* Dkt. 50, pp. 140-44, 152-53, 159-64
[38] Dkt. 54, p. 21
[39] Dkt. 50, pp. 98-108, 110-17

0143012\206644\14841939v1

**Fourth**, in its final point, Defendant purports that Dr. Fishkind "appears to overstate, in a way unsupported by the data, the relative percentages of households used in his calculation."[40] Again, Defendant cites to nothing in the record to support Defendant's foregoing contention.[41] To the extent that it "appears" that Dr. Fishkind's overstated anything in his expert reports (which Plaintiffs and Dr. Fishkind deny), then Defendant can address that on cross-examination.

Accordingly, each of Defendant's foregoing reasons to exclude Dr. Fishkind's testimony are refuted by the record evidence or are more appropriate to confront Dr. Fishkind with during cross-examination. Thus, none of Defendant's reasons support Defendant's requested relief to exclude Dr. Fishkind's testimony under *Daubert*

### D.    Defendant Has Provided No Factual or Legal Basis to Strike Dr. Fishkind's Expert Testimony Due to a Purported Delayed Disclosure of Demographic Surveys.

In Section II(A) of the Motion, Defendant makes a confusing argument to strike Dr. Fishkind's testimony based upon a purported delayed disclosure of demographic information.[42] In Exhibit #3 to Dr. Fishkind's Initial Report, Dr. Fishkind complied with Federal Rule of Civil Procedure 26(a)(2)(B)(ii) by enumerating the materials reviewed and relied upon by Dr. Fishkind in developing

---

[40] Dkt. 54, p. 21-22
[41] *See* Dkt. 54, p. 21-22
[42] Dkt. 54, p. 23

12

his opinions in his initial report.[43] One of the materials listed is "Demographic Information – Age and Race Ethnicity – Brevard".[44]

Defendant asserts that "FRCP requires production of the documents at the time of disclosure of expert witnesses", without citing to any legal authority for Defendant's proposition.[45] However, Dr. Fishkind was not obligated to produce the documents upon which he relied upon for his expert report, as Defendant falsely contends without legal citation. *See Doe v. Willis*, No. 8:21-CV-1576-VMC-CPT, 2023 WL 2787188, at *3 (M.D. Fla. Apr. 5, 2023) ("Rule 26(a) requires only that an expert witness describe the information the expert considered in reaching her opinion. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) ("The report must contain ... the facts or data considered by the witness in form [the opinions]" [.])…. Indeed, Rule 26 merely requires the expert report to contain a statement of the data or other information considered by the witness in forming the opinions. The plain language of the Rule does not require the expert to attach the data or other information to the opinion. Therefore, Swift has not violated Rule 26 by failing to provide Doe with the raw data from Dr. Christiansen's examination.") (internal citations and quotation marks omitted).

---

[43] Dkt. 50, pp. 68-71
[44] Dkt. 50, p. 68
[45] *See* Dkt. 54, p. 23

Moreover, when Defendant actually requested the documents that Dr. Fishkind relied upon via Defendant's second requests to produce to each of the Plaintiffs served on December 20, 2025 (collectively, the "Second R.T.P.")[46], Defendant produced Dr. Fishkind's entire work file (over 9000 pages of documents) on January 27, 2025[47]. Thus, Plaintiffs timely complied with their discovery obligations and did not "delay" in producing any documents relied upon by Dr. Fishkind.

Also, Defendant complains that it did not receive "demographic surveys" (the "Demographic Surveys") until a day after the close of discovery.[48] Defendant's complaint is not well taken.

In the Second R.T.P. to AHP and Concord, Defendant requested "[a]ny and all documents or materials, including, but not limited to tangible evidence, documents, electronic correspondence, digital documentation, correspondence, notes, memoranda, reports, logs, surveys, datasets, summaries and any other records relating to the race and age of residents or tenants of" the four Communities "for the last ten (10) years."[49] AHP and Concord objected to the foregoing requests to produce.[50]

---

[46] **Exhibit "1"** is each of Plaintiffs' responses and objections to the Second R.T.P.
[47] *See* Dkt. 54, p. 9
[48] *See* Dkt. 54, pp. 10, 23
[49] *See* Ex. 1, R.T.P. nos. 15-18 directed to AHP, and R.T.P. nos. 2-5 directed to Concord
[50] *See* Ex. 1, R.T.P. nos. 15-18 directed to AHP, and R.T.P. nos. 2-5 directed to Concord

Defendant never moved to compel AHP's or Concord's production of responsive documents to the foregoing requests to produce. Significantly, after good-faith conferral, Plaintiffs' and Defendant's respective attorneys reached an agreement to produce a more-narrowly tailored production than originally requested by Defendant in the Second R.T.P., i.e., solely the Demographic Surveys that Defendant now contends were delayed in being produced, to resolve AHP's and Concord's objections.[51]

After reaching an agreement on the production of the Demographic Surveys, Defendant is now attempting to exclude Dr. Fishkind's testimony based upon purported "delayed disclosure" of the same. This argument is specious as AHP and Concord timely objected to the production of the Demographic Surveys when requested by Defendant[52] and, thus, were under no obligation to produce the same, unless/until Defendant prevailed on a motion to compel or Plaintiffs and Defendant resolved AHP's and Concord's objections. Plaintiffs and Defendant reached an agreement to resolve AHP's and Concord's foregoing objections by producing the Demographic Surveys for a narrower time period (i.e., five years instead of ten years as originally requested by Defendant).[53] Yet, after seemingly "resolving" the

---

[51] *See* **Exhibit "2"** hereto, which are email correspondence between Plaintiffs' and Defendant's counsel
[52] *See* Ex. 1, R.T.P. nos. 15-18 directed to AHP, and R.T.P. nos. 2-5 directed to Concord
[53] *See* Ex. 2

0143012\206644\14841939v1

discovery dispute over the Demographic Surveys, Defendant now moves to exclude Dr. Fishkind's expert testimony for a "delayed disclosure" of the Demographic Surveys that AHP and Concord objected to producing in the first place. Defendant's argument is as meritless as it is underhanded.

To the extent that this Court finds that Plaintiffs somehow violated their Rule 26 disclosure requirements by not producing the Demographic Surveys until after AHP, Concord, and Defendant resolved AHP's and Concord's objections, this Court must consider whether the purported "delayed disclosure" was either substantially justified or harmless; if it was either substantially justified or harmless, then this Court cannot impose sanctions. *See, e.g.*, *Dero Roofing, LLC v. Triton, Inc.*, 344 F.R.D. 566, 573 (M.D. Fla. 2023) ("When a party fails to provide information required by Rule 26, as here, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") (internal quotation marks omitted).

"Failure to comply with Rule 26(a) is substantially justified when a reasonable person would be satisfied that [the] parties could differ as to whether the party was required to comply with the disclosure request....The test is satisfied if there is [a] genuine dispute concerning compliance." *Dero Roofing, LLC*, 344 F.R.D. at 573-74 (internal citations and quotation marks omitted). As explained *supra*, the Demographic Surveys were not produced by AHP and Concord when requested

because they objected to the production of the Demographic Surveys. It was not until AHP, Concord, and Defendant reached an agreement on AHP's and Concord's objections that they produced the Demographic Surveys. Thus, at the very least, there is a genuine dispute concerning Plaintiffs' compliance with Rule 26 as to the Demographic Surveys.

Also, Defendant was not harmed by AHP's and Concord's production of the Demographic Surveys as it relates to Dr. Fishkind's expert opinions. Again, Plaintiffs timely produced Dr. Fishkind's entire file (over 9000 pages) a month before the close of discovery.[54] Plaintiffs provided Defendant with multiple dates of availability for Dr. Fishkind's deposition before and after the close of discovery; yet Defendant chose not to depose Dr. Fishkind for whatever reason. And finally, Defendant's expert, Dr. Malone, rendered his Supplemental Report after Plaintiffs produced the Demographic Surveys on March 11, 2025. Thus, Defendant was not prejudiced at all by the purported delayed disclosure of the Demographic Surveys because Defendant's expert was able to consider the same in formulating his Supplemental Report.

Accordingly, Defendant presents no factual or legal basis to strike Dr. Fishkind's expert testimony due to the purported "delayed discovery" of the demographic surveys. Thus, this Court must deny the Motion on this ground.

---

[54] *See* Dkt. 54, p. 9

0143012\206644\14841939v1

**E.** **Defendant Has Provided No Factual or Legal Basis to Strike Dr. Fishkind's Expert Testimony due to Its Untimeliness or Purported Impermissible Scope.**

Defendant argues that Dr. Fishkind's Rebuttal Report should be stricken because it was untimely under Federal Rule of Civil Procedure 26(a)(2)(D).[55] Even though Dr. Fishkind's Rebuttal Report was filed after the thirty-day deadline provided by Rule 26(a)(2)(D), that is insufficient, in and of itself, to support the imposition of sanctions under Federal Rule of Civil Procedure 37.

"Rule 37(c)(1) provides that '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use [the] information of the witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' As a result, it is well settled that Fed.R.Civ.P. 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26 [by excluding the pertinent evidence], unless the violation was harmless or substantially justified." *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 693 (S.D. Fla. 2010) (internal quotation marks omitted).

Here, Plaintiffs' untimely service of Dr. Fishkind's Rebuttal Report was harmless for multiple reasons. First, Defendant does not even argue in the Motion that Defendant was harmed by Dr. Fishkind's Rebuttal Report being served after the

---

[55] *See* Dkt. 54, p. 24

0143012\206644\14841939v1

thirty-day deadline.[56] Second, Defendant was not harmed by the untimely service of Dr. Fishkind's Rebuttal Report, which was served on January 21, 2025[57], i.e., thirty-nine days before the close of discovery. During the time between service of Dr. Fishkind's Rebuttal Report and the close of discovery, Defendant took multiple depositions of witnesses, Plaintiffs provided multiple dates of availability to take Dr. Fishkind's deposition, and Plaintiffs even had sufficient time to propound written discovery requests regarding Dr. Fishkind's Rebuttal Report if Defendant so desired. Most significantly, Defendant's expert even filed his Supplemental Report more than a month after Dr. Fishkind's Rebuttal Report. Thus, even though Dr. Fishkind's Rebuttal Report was untimely served under Rule 26(a)(2)(D), it was completely harmless to Defendant who had ample time to conduct whatever discovery it needed to conduct with respect to Dr. Fishkind's Rebuttal Report and to supplement its expert's opinions.

Defendant also makes an unavailing argument that the scope of Dr. Fishkind's Rebuttal Report is impermissible.[58] Defendant cites to *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) and the unidentified case of "Coles v. Perry, 217 F.R.D. at. [sic]" (as Defendant failed to provide the proper citation)[59] for the

---

[56] See Dkt. 54, p. 24-25
[57] See Dkt. 54, p. 9
[58] *See* Dkt. 54, p. 24
[59] *See* Dkt. 54, p. 24

0143012\206644\14841939v1

proposition that "supplemental reports are permitted under Rule 26(e)(1) only in the following situations: (1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete."[60] (emphasis added). As Dr. Fishkind's Rebuttal Report's title denotes, it was a rebuttal report under Rule 26(a)(2)(D) and not a supplemental report under Rule 26(3)(1). Thus, Defendant's argument on the purportedly impermissible scope of Dr. Fishkind's Rebuttal Report completely misses the mark.

## III. CONCLUSION

Accordingly, Defendant has failed to establish any basis for the extreme remedy of striking any portion of Dr. Fishkind's expert testimony. Consequently, this Court must deny the Motion in its entirety.

---

[60] *See* Dkt. 54, p. 24

0143012\206644\14841939v1

Filed this 22nd day of April 2025.

*/s/ Michael D. Piccolo*

**Rebecca E. Rhoden**
Florida Bar No. 0019148
**Michael D. Piccolo**
Florida Bar No. 1003505
**Lowndes, Drosdick, Doster, Kantor & Reed, P.A.**
215 North Eola Drive
Orlando, Florida 32802-2809
Telephone: (407) 843-4600
rebecca.rhoden@lowndes-law.com
michael.piccolo@lowndes-law.com
litcontrol@lowndes-law.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2025, a true and correct copy of the foregoing was served by filing the foregoing with the Clerk of Court via CM/ECF, which will send notice of such filing to all counsel of record.

*/s/ Michael D. Piccolo*

**Michael D. Piccolo**

0143012\206644\14841939v1