UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ATLANTIC HOUSING PARTNERS L.L.L.P., a Florida limited liability partnership; CANTON CONSTRUCTION, LLC, A Florida limited liability corporation; CONCORD MANAGEMENT, LTD., a Florida limited partnership; THE VENUE AT HERITAGE OAKS PARTNERS, LTD., <br>  Plaintiffs,<br>v.<br>BREVARD COUNTY, a political subdivision of the state of Florida,<br>  Defendant. | Case No.<br>6:23-CV-02473-CEM-DCI |

**DEFENDANT BREVARD COUNTY'S
REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

Comes Now Defendant, BREVARD COUNTY, by and through its undersigned counsel and, pursuant to Local Rule 3.01(d), hereby files its Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Final Summary Judgment.

**I. INTRODUCTION**

This case involves an experienced, non-minority developer who lobbied for the Live Local Act and subsequently selected a development site unsuitable for the proposed project. Local residents expressed their concerns, which the Brevard County Board of County Commissioners ("BCBCC") duly considered, as required by TEFRA. After consideration of numerous legitimate, non-discriminatory reasons for denial, the Commissioners denied the bond application. Instead of trying to develop

1

the project at a different location or seek other financing, Scott Culp ("Culp") told the Brevard County Housing Finance members, "you guys know me, I don't like to get punched – I like to punch back" (Dkt. 53, Exh. C, ¶27). Without any evidence of discrimination, as admitted by Culp, Plaintiffs filed this lawsuit three weeks after the bond denial. Plaintiffs then hired Dr. Hank Fishkind, as they had before, and paid him almost $100,000 to attempt to make a discrimination claim for them. Plaintiffs seek to rely upon purported evidence created by Dr. Fishkind, but was never actually presented to BCBCC. Further, Dr. Fishkind's opinions are not supported by reliable, fact-based evidence, as outlined in Defendant's Motion for Summary Judgment (Dkt. 53) and *Daubert* Motion (Dkt. 54), and summarized below. Moreover, the denial was necessary to achieve legitimate, non-discriminatory reasons and no alternative practice was available. Plaintiffs cannot establish a prima facie case, there are no issues of genuine fact and Defendant is entitled to summary judgment as a matter of law.

II. **DR. FISHKIND'S OPINIONS DO NOT ESTABLISH A PRIMA FACIE CASE NOR CREATE A GENUINE ISSUE OF MATERIAL FACT**

<u>First</u>, Plaintiffs' Response acknowledges that the bond application submitted showed "20% of the Development's units were set aside for affordable housing and 80% of the Development's units were set aside for market rate housing" (Dkt. 60, p. 4). Plaintiffs claim that Dr. Fishkind used "a more accurate unit mix" and cite to Culp's deposition for support of this position (Dkt. 60, p. 4). However, Culp was asked if the set asides had been determined for the proposed development and Culp responded, "So we had not set whether it was 10 percent at 30, 10 percent at 80 and

2

80 percent at 60, which it averages to 60, you know. We had not set those percentages. We knew that it was going to average to 100 percent at 60 percent" (Dkt. 54, Ex I, p. 117). Dr. Fishkind's report cites "Plaintiff's project plan" as the basis for his set aside numbers, although Culp admitted there was no project plan (Dkt. 50, p. 42, Dkt. 54, Ex I, p. 28). Further, Culp was asked "where did he (Fishkind) get those set aside figures from, if you know?" Culp responded, "I don't recall." (Dkt. 50, p. 408-409). Dr. Fishkind used set asides not supported by the evidence in this case.[1]

The relevance of these set asides is no "red herring," as claimed by Plaintiffs (Dkt. 60, p. 5). Dr. Fishkind relies on the set asides throughout his report, including as the basis for determining the "affected group" to render his opinions (See Fishkind report, Dkt. 50, pp 39-63, paragraphs 12, 19, 22, 27, 32, 36, 40, 43, 69; Table 1, 4, 7, 9). However, the set asides used by Dr. Fishkind were not in the application, were not presented to BCBCC and are not supported by Culp's deposition testimony. Dr. Fishkind's reliance on a "project plan," which apparently doesn't exist, undermines the validity of his conclusions. While Plaintiffs now cite to a footnote in the application that the set asides couldn't be <u>less</u> than the application (Dkt. 50 p. 5), which Defendant agrees with, Culp never said the set asides would provide <u>more</u> affordable housing than what was in the application. On the contrary, Culp stated several times prior to

---

[1] Dr. Fishkind's set asides also contradict the other evidence in this case. The set aside numbers for Venue at Vierra has set asides at 40%, 60% and 80% (not 30/60/80) (Dkt. 50, p. 171). The Land Use Restriction Agreement, which would have encumbered the prosed development, also does not have the 30/60/80% set asides used by Dr. Fishkind. (Dkt. 53, Exhibit L).

3

the bond denial that only 20% of the units, or 21 apartments, would be below market rate. Culp never said that the proposed development would have 30/60/80% set asides. Culp and Dr. Fishkind now offer revised set asides inconsistent with prior disclosures and are speculative, at best.

Second, Dr. Fishkind's expert report draws conclusions about racial composition and potential disparate impact based on a tenant survey that had a low response rate. The data provided by Johnathan Thomas, and relied upon by Dr. Fishkind, showed the voluntary tenant response regarding race at Hammock Harbor, Malabar Cove (Phase 1 and 2) and Wickham Club was only 37.50%, 76.20%, 56.58% and 52.67% (Dkt 53, Ex N). Given the low response rate, Dr. Fishkind's conclusions lack the statistical robustness required under Federal Rule of Evidence 702 and *Daubert* standards. Statistical evidence used to infer discriminatory effect must be statistically sound and sufficiently robust. Dr. Fishkind's report fails this standard, as the low response rate leaves open the strong possibility that the racial data collected does not reflect the actual composition of the tenant population at the other three properties.

Third, Dr. Fishkind's analysis should have been confined to the Venue at Viera property, which shares similar characteristics with the proposed development and offered a reliable race survey response rate. Plaintiffs now claim "the restrictions were materially different" for Venue at Vierra. (Dkt. 60, p. 8). However, Culp repeatedly stated Venue at Vierra had "similar financing structure, set-asides, restrictions, amenities and design" (Dkt. 53, Exh. 7). Never once were the non-senior properties mentioned by Culp prior to the bond denial. Also, Venue at Vierra had a high response

4

rate to the race survey at 93.37% so the numbers are much more reliable than the race surveys for the other properties. Moreover, 92% of the residents at Venue at Vierra were over the age of 55 (Thomas 15:22). Had Dr. Fishkind used the true comparator in this case, Venue at Vierra, the black seniors who would have occupied the proposed development would have almost certainly been about 7.78%, not the 35% claimed by Dr. Fishkind to render his opinions regarding segregated effect and disparate impact.

<u>Fourth</u>, Plaintiffs claim that West Melbourne is relevant market (Dkt. 60, p. 10). As argued in response to Plaintiffs' Motion for Summary Judgment (Dkt. 53), Dr. Fishkind uses several geographic areas in his analysis, including Cocoa, Rockledge, Viera and Melbourne making his opinions unreliable. <u>Finally</u>, Plaintiffs' Response claims that Dr. Fishkind's conclusions are "unrebutted." As previously addressed in Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. 57) and Daubert Motion (Dkt. 54), Dr. Malone specifically rebuts Dr. Fishkind's conclusions such that Dr. Fishkind created basically a new report. Dr. Fishkind failed to abide by FRCP 26 disclosure requirements and his untimely new analysis, arguments and conclusions drafted in January 2025 should be excluded.

### III. <u>DEFENDANT HAS SATISFIED ITS BURDEN THAT THE DENIAL WAS NECESSARY TO ACHIEVE LEGITIMATE, NON-DISCRIMINATORY GOVERNMENT INTERESTS</u>

Plaintiffs allege that Defendant has failed to show the denial of the bond application was necessary (Dkt. 60, p. 12). It is undisputed that BCBCC considered the bond application pursuant to TEFRA, which specifically states that BCBCC is **required** to hold a public hearing while considering the "**location and nature**" of the proposed

5

project. It is hard to understand how Plaintiffs now claim "Defendant does not argue anywhere that its denial of the bond application was 'necessary' to achieve any interests of Defendant" (Dkt. 60, p. 13). Not only was the denial **necessary** to represent community concerns, but Defendant also devoted considerable attention in its motion to outlining multiple legitimate, non-discriminatory reasons necessitating the denial. The reasons included, but are not limited to: traffic control, location suitability, inconsistency with West Melbourne plans, lack of notice about the BCHFA hearing, aesthetics of the height of the building for the area, minimal impact to families in need, inconsistencies in the application, lack of a formal site plan, avoiding a potential lawsuit by the residents, congestion and expected rent at the proposed project (Dkt 53). All these concerns fall within TEFRA's requirement to consider the "location and nature of the proposed project to be financed." The denial of the bond application was **necessary** in order to address all these legitimate government concerns regarding **the public benefit of approving the bond**. Finally, the fact that Culp said multiple times that the project would be developed even if the bond was denied further supports Defendant's position. Defendant could address the legitimate non-discriminatory concerns regarding the public benefit of approving the bond and Plaintiffs could have still developed the project using other financing or at another location.

Plaintiff claims *Affordable Hous. Dev. Corp. v. City of Fresno,* 433 F.3d 1182 (9th Cir. 2006) is "uninstructive, distinguishable" (Dkt. 60, p. 16). On the contrary, the case is directly on point and offers this Court persuasive authority regarding the public notice requirement of TEFRA for this case of first impression for this Court. Even if this

6

Court disregards the *Fresno* well-reasoned conclusions, this Court has the clear guidance of 26 U.S.C.A. § 1.147(f)-1(d)(1) which mandates "a reasonable opportunity for interested individuals to express their views, orally or in writing, on the proposed issue of bonds and the location and nature of the proposed project to be financed." Defendant provided a public hearing so individuals could express views on **the location and nature of the proposed project.** Thereafter, Defendant rejected the bond application due to the location and nature of the proposed project and in accordance with a necessary, legitimate government interest.

### IV.   NO ALTERNATIVE PRACTICE AVAILABLE

As to a less discriminatory alternative practice "Plaintiffs could have addressed the public issues during the land-entitlement process" (Dkt. 60, p. 19). There would have been no "land-entitled process" in this case as the Live Local Act did not provide for one. It was clear from Culp's numerous statements that the project was being developed pursuant to Live Local, which essentially eliminated any "land-entitlement process." It is disingenuous for Plaintiffs to now suggest they would have addressed legitimate government interests during the "land-entitlement process" when Plaintiffs repeatedly made it clear that Live Local didn't require consideration of local interests and priorities.

### V.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant its Motion for Final Summary Judgment as a matter of law.

Respectfully submitted,

*/s/ Susan G. Gainey*
Susan G. Gainey, Esquire.
Florida Bar No.: 1016477
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750
Orlando, FL 32801
Attorney for Brevard County