# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

Case No. 6:23-cv-2473-JSS-DCI

ATLANTIC HOUSING PARTNERS L.L.L.P., a Florida limited liability partnership; CANTON CONSTRUCTION, LLC, a Florida limited liability corporation; CONCORD MANAGEMENT, LTD., a Florida limited partnership; and THE VENUE AT HERITAGE OAKS PARTNERS, LTD., a Florida limited partnership,

    Plaintiffs,

v.

BREVARD COUNTY, a political subdivision of the State of Florida,

    Defendant.
_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (DKT. 57)**

Plaintiffs, Atlantic Housing Partners L.L.L.P., Canton Construction, LLC, Concord Management, Ltd., and The Venue at Heritage Oaks Partners, Ltd., by and through their undersigned attorneys, and pursuant to Local Rule 3.01, reply to Defendant, Brevard County's, *Response in Opposition to Plaintiffs' Motion for*

1

*Partial Summary Judgment and Incorporated Memorandum of Law* (Dkt. 57) (the "Response") as follows:

**A.    In the Response, Defendant Has Failed to Refute Plaintiffs'** ***Prima Facie*** **Case for Segregative Effect.**

Defendant purports that Dr. Fishkind was inconsistent with his definition of the "Relevant Market" between his Rebuttal Report and his Initial Report.[1] However, Defendant's argument is nonsensical as Defendant points out that Dr. Fishkind defined the "Relevant Market" as including "Melbourne and West Melbourne"[2], which comports with Dr. Fishkind's reports[3]. Thus, there is no "inconsistencies" in Dr. Fishkind's definition of the "Relevant Market" between his two reports.

Defendant attempts to re-write Dr. Malone's deposition testimony and expert reports by purporting that Dr. Malone rebutted Dr. Fishkind's Rebuttal Report and rendered an opinion on whether Defendant's denial of the Bond Application resulted in a segregative effect.[4] Dr. Malone unequivocally testified that (1) he did not analyze Dr. Fishkind's Rebuttal Report under the direction of Defendant's counsel[5], and (2) Dr. Malone did not perform "any separate independent analysis" of "whether or not Brevard County's denial of the plaintiffs' bond application resulted in a

---

[1] *See* Dkt. 57, pp. 6-7
[2] *See* Dkt. 57, pp. 6-7
[3] *See* Dkt. 50, pp. 47-48 paras. 30-31; *see also* Dkt. 50, p. 106
[4] *See* Dkt. 57, p. 7
[5] Dkt. 50, p. 181-82 17:14-18:10; *see also* Dkt. 50, pp. 130-154, *passim*; Dkt. 50, pp. 156-175, *passim*

segregative effect"[6]. That is, Dr. Fishkind's analysis and conclusions of segregative effect in Dr. Fishkind's Rebuttal Report were unrebutted by Dr. Malone.

Defendant argues that its single denial of the Bond Application is not a "policy, procedure, or practice".[7] In making this argument, Defendant incorrectly argues that Plaintiffs' Segregative-Effect Claims fail because "[d]isparate impact claims generally challenge policies and practices, not a single bond denial."[8] Plaintiffs' Segregative-Effect Claims are legally different than Plaintiffs' Disparate-Impact Claims.[9] Not only does Defendant incorrectly conflate a disparate-impact claim with a segregative-effect claim, Defendant is also wrong in its recitation of the applicable law as a single decision by a governmental unit can establish a segregative-effect claim as this Court has already acknowledged[10]. *See, e.g.*, *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006) ("A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that **the decision** has a segregative effect or that 'it makes housing options significantly more restrictive for members of a protected group than for persons outside that group.'").

---

[6] Dkt. 50, p. 186, 34:15-35:5; *see also* Dkt. 50, pp. 130-154, *passim*; Dkt. 50, pp. 156-175, *passim*
[7] *See* Dkt. 57, pp. 7-8
[8] *See* Dkt. 57, p. 8
[9] *See* Dkt. 34, p. 14; *see also* Dkt. 53, p. 10
[10] *See* Dkt. 34, p. 15 (citing *Hallmark Devs., Inc.*, 466 F.3d at 1286)

Defendant purports that Dr. Fishkind's analysis simply shows "that the area is predominantly white", which is insufficient because that only demonstrates "an unsurprising fact that racial minorities are minorities."[11] Dr. Fishkind performed an analysis of whether a segregated-housing pattern based upon race existed in West Melbourne.[12] Dr. Fishkind's analysis of the segregated-housing pattern is that Brevard County's percentage of black households is nine percent; whereas West Melbourne's percentage of black households is only four percent (i.e., more than fifty percent less than Brevard County's percentage of black households).[13] Dr. Fishkind's statistical analysis demonstrates that a segregated-housing pattern exists in West Melbourne in that West Melbourne has more than fifty percent less black households than Brevard County, and that black households pale in comparison to white households, which represent eighty percent of households in Brevard County and seventy-nine percent of households in West Melbourne.[14]

**B.   In the Response, Defendant Has Failed to Refute Plaintiffs'** *Prima Facie* **Case for Disparate Impact.**

Defendant argues that Dr. Fishkind purportedly relied on irrelevant set asides.[15] Defendant's argument ignores the following footnote to the rental

---

[11] *See* Dkt. 57, pp. 8-9
[12] Dkt. 50, pp. 60-61 (paras. 70-76); *see also* Dkt. 50, pp. 122-27 (paras. 89-104)
[13] Dkt. 50, p 106 (paras. 26-29); *see also* Dkt. 50, p. 45 (para. 24)
[14] Dkt. 50, p. 106 (paras. 26-29); *see also* Dkt. 50, p. 45 (para. 24)
[15] *See* Dkt. 57, pp. 9-10

4

breakdown of the set-asides for affordable housing from the Bond Application [16], which provides as follows:

> *NOTE: For any Development anticipating the use of tax credits, gross rents include the rent *plus* the allowance for resident-paid utilities for set-aside units. These rents may not exceed the allowable rents for the chosen set-aside as shown on the applicable rent charts included in the Tax Credit Application Package. Rents will be capped based on set-aside chosen.

(highlighting added). That is, Plaintiffs were prohibited from adjusting the amount of affordable rental units to being less than what was set aside in the Bond Application; however, as the foregoing footnote denotes, Plaintiffs were able to include even more affordable rental units if Plaintiffs applied for tax credits, which they did.

Indeed, when the tax credits for the Development were applied for, the affordable rental unit set-asides were adjusted to comport with the regulatory restrictions for the four-percent low-income housing tax credits.[17] The set-asides were adjusted to a 105-unit, rental apartment community, with apartments offered at below market rates: (a) 21 units affordable to households earning 30% of the area median income; (b) 53 units affordable at 60% AMI; and (c) 31 units affordable at 80% AMI.[18] The foregoing affordable rental unit breakdown is what Dr. Fishkind used in his analysis, which is an even more accurate unit mix of the Development than what was provided in the Bond Application to Defendant as that unit mix was

---

[16] *See* Dkt. 54-1, p. 18
[17] *See* Dkt. 50, pp. 408:21-409:14
[18] *See* Dkt. 50, pp. 99, 115-16, 119 (paras. 78-80), 408:21-409:14

outdated by the time that the tax credits for the Development were applied for and the set-asides were adjusted.[19]

Defendant disagrees with Dr. Fishkind's conclusion about the projected black population of the Development because it purportedly "defies logic and the facts of this case" based upon the purported demographics of the four comparator communities.[20] However, Dr. Fishkind set forth the correct data of the four comparator communities, which underline and support Dr. Fishkind's conclusions.[21]

Finally, Defendant disagrees with the comparators that Dr. Fishkind used in his analysis.[22] Defendant, through Dr. Malone, argues that the only comparator that Dr. Fishkind could have used to project the racial composition of the Development was the racial composition of the Venue at Viera Senior Living Community because it was the only senior-restricted community of Plaintiffs in the relevant market area.[23] In Dr. Fishkind's analysis, he averaged each of Plaintiffs' four comparable communities in the relevant market to ascertain the projected racial composition of the Development.[24] Dr. Fishkind chose to use the average demographics of the four communities because their renters all came from the same relevant market area that the Development's renters would come from.[25] Also, Dr. Fishkind chose not to

---

[19] *See* Dkt. 50, pp. 99, 115-16, 119 (paras. 78-80), 408:21-409:14
[20] *See* Dkt. 57, pp. 10-11
[21] See Dkt. 50, p. 123-124.
[22] *See* Dkt. 57, p. 11
[23] *See* Dkt. 57, p. 11; *see also* Dkt. 50, pp. 158-59
[24] *See* Dkt. 50, pp. 122-25
[25] *See* Dkt. 50, pp. 46-48, 122-25

simply use the Venue at Viera Senior Living Community as the comparator (as Dr. Malone did) because although the Development and the Venue at Viera Senior Living Community was an age-restricted community, the restrictions were materially different. The Development was intended to satisfy the occupant requirements of the Housing for Older Persons Act.[26] That is, the Development was intended to be operated for persons who were fifty-five years of age or older, and at least eighty percent of the occupied units would be occupied by at least one person who was fifty-five years of age or older.[27] Whereas, Venue at Viera Senior Living Community had a age-restriction of 62 years' of age or older.[28]

### C. Defendant Has Failed to Demonstrate that It Was Harmed by the Untimeliness of Dr. Fishkind's Rebuttal Report.

Defendant argues that Dr. Fishkind's Rebuttal Report should be stricken because it was untimely under Federal Rule of Civil Procedure 26(a)(2)(D).[29] Here, Plaintiffs' untimely service of Dr. Fishkind's Rebuttal Report was harmless. Dr. Fishkind's Rebuttal Report was served on January 21, 2025, i.e., thirty-nine days before the close of discovery. During the time between service of Dr. Fishkind's Rebuttal Report and the close of discovery, Defendant took multiple depositions of witnesses, Plaintiffs provided multiple dates of availability to take Dr. Fishkind's

---

[26] *See* Dkt. 50, pp. 317:22-318:6
[27] *See* Dkt. 50, pp. 348:8-18; *see also* 42 U.S.C.A. § 3607(2)(C)(i)
[28] *See* Dkt. 50, pp. 329:25-331:13
[29] See Dkt. 57, pp. 12-15

deposition but Defendant chose not to depose Dr. Fishkind, and Defendant even had sufficient time to propound written discovery requests regarding Dr. Fishkind's Rebuttal Report if Defendant so desired. Also, Defendant's expert filed his Supplemental Report more than a month after Dr. Fishkind's Rebuttal Report, which demonstrates that Defendant's expert had sufficient time to file a rebuttal report to Dr. Fishkind's Rebuttal Report. *See, e.g., Raders v. Frantz*, No. 6:18-CV-711-PGB-EJK, 2022 WL 22870176, at *3 (M.D. Fla. Jan. 18, 2022) ("Courts ... routinely decline to exclude expert testimony when the defendant had the opportunity to seek the intervention of the Court for [the plaintiff's] purported non-compliance before the discovery cut-off but failed to do so. The Court in *Torres* found that even if Wal-Mart had suffered some harm by Plaintiff's inadequate expert disclosure, 'that harm was entirely self-inflicted,' because Wal-Mart never complained to the court, never deposed the expert, and waited until after the close of discovery to seek relief.") (internal citations and quotation marks omitted).

Filed this 6th day of May 2025.

                                         */s/ Michael D. Piccolo*
                                         **Rebecca E. Rhoden**
                                         Florida Bar No. 0019148
                                         **Michael D. Piccolo**
                                         Florida Bar No. 1003505
                                         **Lowndes, Drosdick, Doster, Kantor & Reed, P.A.**
                                         215 North Eola Drive
                                         Orlando, Florida 32802-2809
                                         Telephone: (407) 843-4600
                                         rebecca.rhoden@lowndes-law.com
                                         michael.piccolo@lowndes-law.com
                                         litcontrol@lowndes-law.com

                                         *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of May 2025, a true and correct copy of the foregoing was served by filing the foregoing with the Clerk of Court via CM/ECF, which will send notice of such filing to all counsel of record.

                                         */s/ Michael D. Piccolo*
                                         **Michael D. Piccolo**