UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ATLANTIC HOUSING PARTNERS
L.L.L.P., CANTON CONSTRUCTION
LLC, CONCORD MANAGEMENT,
LTD, and THE VENUE AT
HERITAGE OAKS PARTNERS, LTD,

    Plaintiffs,

v.                                                                        Case No: 6:23-cv-2473-JSS-DCI

BREVARD COUNTY,

    Defendant.
_____/

## ORDER

Plaintiffs move to exclude opinions offered by Patrick Kelleher, a proffered expert on mitigation of damages for Defendant. (Dkt. 51; *see* Dkt. 52.) Defendant opposes the motion. (Dkt. 56.) Upon consideration, for the reasons outlined below, the motion is denied.

## BACKGROUND

Plaintiffs sought to develop affordable housing in Brevard County. (Dkt. 17 ¶¶ 9–14.) The Venue at Heritage Oaks Partners, Ltd. was the contract purchaser of the property. (*Id.* ¶¶ 4, 9.) They, along with Atlantic Housing Partners L.L.L.P., intended to develop as "The Venue at Heritage Oaks," a development comprised of multi-family dwelling units. (*Id.* ¶¶ 1, 10.) Canton Construction, LLC was to construct the development, and once completed, Concord Management, Ltd. was to manage it.

(*Id.* ¶¶ 2–3, 11, 13.)  The project did not come to fruition, however, because in December 2023, Defendant's board of commissioners rejected Plaintiffs' bond financing application. (*Id.* ¶ 22.)

Plaintiffs bring this action against Defendant for damages under the Fair Housing Act and the Florida Fair Housing Act, alleging that Defendant's rejection discriminated against racial minorities. (Dkt. 37 at 9–21.) In Defendant's answer, Defendant "affirmatively alleges that Plaintiffs must mitigate their damages and have failed to do so," and as such, argues that "Plaintiffs' claims should either be barred, or in the alternative, comparatively reduced in accordance with Plaintiffs' failure to mitigate damages." (Dkt. 41 at 9.) Defendant retained Kelleher as an expert to demonstrate that "Plaintiffs' damages model does not consider mitigation and that reasonable possibilities likely existed with respect to mitigation." (Dkt. 56 at 3–4.) Plaintiffs move to exclude Kelleher's opinions pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). (Dkt. 51; *see* Dkt. 52.)

## APPLICABLE STANDARD

"To fulfil their obligation under *Daubert*, district courts must engage in a rigorous inquiry" focusing on three issues: (1) whether "the expert is qualified to testify competently regarding the matters he intends to address," (2) whether "the methodology by which the expert reaches his conclusions is sufficiently reliable," and (3) whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005) (quotation

omitted). "[T]he part[ies] seeking to introduce the expert at trial"—here, Plaintiffs—"bear[] the burden of establishing [the expert's] qualifications, reliability, and helpfulness." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022). The court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[T]o be admissible, an expert's testimony must be based on more than subjective belief or unsupported speculation." *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996) (quotation omitted).

## ANALYSIS

Plaintiffs challenge Kelleher's opinion as unreliable and unhelpful. (Dkt. 51 at 4–6.) The court addresses reliability before turning to helpfulness.

Kelleher is a Certified Public Accountant (CPA) and Certified in Financial Forensics (CFF) with both a Bachelor of Science in accounting and a Master of Business Administration focused on finance, and he has more than twenty years of experience in forensic and investigative accounting. (Dkt. 52 at 32.) Kelleher submitted a twenty-page report that stated his opinions, included the documents he considered, and explained the analysis he performed, among other things. (*See* Dkt. 52 at 4–23.) Kelleher opines that "Plaintiffs have not demonstrated any economic damages with reasonable certainty, but rather have provided a model that does not reflect the timing and accuracy of the cash flows associated with th[e housing] project." (*Id.* at 7.) Kelleher also identifies alleged errors and deficiencies with Plaintiffs' model and with testimony from two of Plaintiffs' witnesses. (*See id.* at 4–23.) With respect

to his methodology, Kelleher reviewed Plaintiffs' documents and used them to render accounting and financial testimony related to mitigation. (Dkt. 52 at 6–9; Dkt. 56 at 3–4.) In doing so, he used calculations and analysis in accordance with the American Institute of Certified Public Accountants (AICPA) Statement on Standards for Forensic Services. (Dkt. 52 at 6–9.) He also used AICPA prescribed methods for calculating damages. (*Id.*)

Plaintiffs do not dispute Kelleher's qualifications, (*see* Dkt. 51), and the court concludes that Kelleher is qualified in light of his decades of education and experience. *See Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*, 585 F. Supp. 3d 1326, 1331 (M.D. Fla. 2022) ("The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." (quotation omitted)); *Healy v. NCL (Bah.) Ltd.*, No. 1:23-cv-21306-KMM, 2024 WL 4132981, at *4 (S.D. Fla. Aug. 13, 2024) (concluding that an expert's education and experience concerning helmets qualified him to furnish expert testimony on helmet-related matters).

Plaintiffs state, without citations to the record or supporting caselaw, that Kelleher's opinion is unreliable as it is not based in accounting—Kelleher's area of expertise—but is based on a qualitative analysis. (Dkt. 51 at 5.) Plaintiffs also assert that Kelleher's opinion cannot be tested and does not use a generally accepted methodology. (*Id.*) However, Kelleher notes that he performed his analysis in accordance with AICPA standards and followed AICPA prescribed methods for calculating damages. (Dkt. 52 at 6–8.) Courts have consistently found that such

methodologies are generally accepted and thus reliable. *See In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-81057-CIV-WPD, 2017 WL 11680400, at *8 (S.D. Fla. June 21, 2017) (denying a *Daubert* motion when the expert's methodology relied on AICPA standards); *Quorum Health Res., LLC v. Hosp. Auth. of Wayne Cnty., Ga.*, No. CV208-042, 2010 WL 11537686, at *1–3 (S.D. Ga. Feb. 17, 2010) (same); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, No. 01-4111-CIV, 2004 WL 6044760, at *16 (S.D. Fla. July 1, 2004) (same). Similarly, the court finds that Kelleher's methodology is sufficiently reliable. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 331 (S.D.N.Y. 2022) (agreeing with courts that "have recognized industry standard methodologies promulgated by the AICPA as valid for *Daubert* purposes"); *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 327–28 (S.D.N.Y. 2015) (finding that "the general accounting standards promulgated by the AICPA" were reliable). If Plaintiffs wish to undermine Kelleher's opinions, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (quotations omitted).

Plaintiffs further challenge Kelleher's opinions as unhelpful because they are "not beyond the understanding of the average lay[]person." (Dkt. 51 at 5.) Plaintiffs also contend that Kelleher's opinions offer just what Defendant's attorney could argue in closing arguments. (*Id.* at 6.) However, Kelleher's testimony can assist the jury with financial and accounting principles. (*See* Dkt. 56 at 7–8.) *See WWP, Inc. v.*

*Wounded Warriors Fam. Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) ("There is not . . . an implicit requirement in [Rule] 702 for the proffered expert to make complicated mathematical calculations." (emphasis omitted)). Even if Kelleher's opinion "boils down to[,] at its essence," something a layperson may understand, the purpose of an expert is to help simplify complex concepts, boiling them down—as Plaintiffs point out—so that laypersons can comprehend them. (*See* Dkt. 51 at 5–6.) *See United States v. Davis*, 602 F. Supp. 2d 658, 684 (D. Md. 2009) ("[T]he purpose of presenting [an expert's] opinion . . . is to greatly simplify a complex scientific and mathematical concept for lay jurors."); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 724 (E.D. Wis. 2008) ("There is no question that [an accounting expert's] testimony [would] assist the jury in its calculation of damages, should that prove to be necessary."). Although Kelleher's conclusions may be simple, the mathematical calculations leading to such conclusions are beyond the understanding of the average layperson, so his opinions would help the jury. *See Sihler v. Glob. E-Trading, LLC*, No. 8:23-CV-1450-VMC-LSG, 2025 WL 1425400, at *7 (M.D. Fla. May 16, 2025) ("It is certainly helpful to the jury to have an analysis of the voluminous data from the spreadsheets provided to them rather than reviewing all the data in the spreadsheets themselves to reach a damages calculation."); *Palma v. Safeco Ins. Co. of Ill.*, No. 820CV251TKKMJSS, 2021 WL 1405507, at *4 (M.D. Fla. Apr. 14, 2021) (concluding that mathematical calculations for determining damages were "beyond the understanding of the average lay[]person" and that the expert's testimony would thus help the jury); *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, No. 18-CV-63130,

2020 WL 1666763, at *8 (S.D. Fla. Apr. 3, 2020) ("Although at least some lay people are likely capable of performing the same analysis and calculations, the work undertaken by [the proffered expert] is undoubtedly beyond the understanding of the average lay[]person." (emphasis omitted)).

Kelleher can explain field-specific information that the average layperson does not know, including, but not limited to, the capital forces specific to Plaintiffs' business model, the ownership structure of the entities at issue, and how these topics affect the ability to redeploy capital. (*See* Dkt. 56 at 7–8.) *See Scott v. Paychex Ins. Agency, Inc.*, No. 22-62052-CIV, 2023 WL 5275182, at *5 (S.D. Fla. Aug. 16, 2023) (noting an expert's background and experience and holding that the expert's testimony was helpful because the expert's knowledge exceeded the knowledge of the average layperson); *United States v. Everglades Coll., Inc.*, No. 12-60185-CIV, 2014 WL 11531790, at *3 (S.D. Fla. May 27, 2014) (holding that the complex financial underpinnings of a given industry model were beyond the understanding of the average layperson such that the expert's opinions were helpful to the jury). Thus, the court concludes that Kelleher's expert testimony may "help the jury determine whether [Plaintiffs] failed to reasonably mitigate [their] damages, and if so, by how much they failed to do so." *See Ocean 10 Sec. LLC v. Lynchburg Redevelopment & Hous. Auth.*, 673 F. Supp. 3d 798, 811 (W.D. Va. 2023). Given the "liberal standard for relevance to whether expert testimony will aid [the] jury in resolving the facts," the court declines to exclude Kelleher's testimony under *Daubert*. *See United States v. Bachynsky*, 415 F. App'x 167, 174 (11th Cir. 2011).

## CONCLUSION

Accordingly, Plaintiffs' motion (Dkt. 51) is **DENIED**.

**ORDERED** in Orlando, Florida, on November 7, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record