UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ATLANTIC HOUSING PARTNERS
L.L.L.P., CANTON CONSTRUCTION
LLC, CONCORD MANAGEMENT,
LTD., and THE VENUE AT
HERITAGE OAKS PARTNERS, LTD.,

    Plaintiffs,

v.                                                      Case No: 6:23-cv-2473-JSS-DCI

BREVARD COUNTY,

    Defendant.
_____/

## ORDER

Defendant, Brevard County, moves for summary judgment. (Dkts. 53, 61.) Plaintiffs oppose the motion. (Dkt. 60.) Plaintiffs also move for partial summary judgment, (Dkts. 49, 62), which Defendant opposes, (Dkt. 57). Additionally, Defendant has filed three motions in limine. (Dkts. 54, 55, 69.) Upon consideration, for the reasons outlined below, the court grants summary judgment to Defendant, denies Plaintiffs' motion for partial summary judgment, and denies Defendant's motions in limine as moot.

## BACKGROUND

Plaintiff The Venue at Heritage Oaks Partners, Ltd. was the contract purchaser of real property—located in West Melbourne in Brevard County, Florida—which it

sought to develop into affordable housing.¹ (Dkt. 50 at 477–92.) The company, along with Plaintiff Atlantic Housing Partners L.L.L.P. (AHP), intended to build The Venue at Heritage Oaks, a development comprising 105 multi-family units. (*Id.*) Plaintiff Canton Construction, LLC was to construct the development, and once the development was completed, Plaintiff Concord Management, Ltd. was to manage it. (*Id.*) Plaintiffs had previously successfully developed four affordable apartment communities in Brevard County. (Dkt. 53-16 at 5, 7–8, 11, 22–23.)

On July 31, 2023, AHP submitted its application for tax-exempt bond financing to finance the development.² (Dkt. 50 at 212.) The aggregate principal amount of the bond for which Plaintiffs applied was $16,750,000. (*Id.* at 477–92.) On October 25, 2023, the Brevard County Housing Finance Authority (BCHFA) held a public meeting for the purpose of receiving input on the bond application. (*Id.*) After that meeting, the BCHFA recommended approval of the application. (*Id.*) On December 5, 2023, Defendant's Board of County Commissioners (BOCC) held a public hearing to decide

---

¹ The housing complex was to be developed under Florida's Live Local Act, which requires municipality authorization of multifamily affordable housing. (Dkt. 50 at 61, 245–46; Dkt. 53-2 at 3–6; Dkt. 53-4 at 104.) *See* Fla. Stat. § 166.04151(7)(a) ("A municipality must authorize multifamily and mixed-use residential as allowable uses in any area zoned for commercial, industrial, or mixed use . . . if at least 40 percent of the residential units in a proposed multifamily development are rental units that, for a period of at least 30 years, are affordable . . . .").

² The Tax Equity and Fiscal Responsibility Act (TEFRA) imposes requirements on the issuers of state and local government bonds. 26 U.S.C. §§ 141–50. (*See* Dkt. 50 at 248, 256.) One way for a bond to qualify as a "private activity bond" under TEFRA requires that "more than 10 percent of the proceeds of the [bond's] issue . . . be used for any private business use." 26 U.S.C. § 141(b)(1). TEFRA requires local government approval of the bond financing plan. *See* 26 U.S.C. § 147(f)(2)(A)(i). Specifically, private activity bonds require public approval by the governmental unit issuing the bond or the "governmental unit . . . on behalf of which such bond was issued." *Id.* There are two methods of obtaining public approval of a private activity bond: "(i) by the applicable elected representative of such governmental unit after a public hearing following reasonable public notice, or (ii) by voter referendum of such governmental unit." 26 U.S.C. § 147(f)(2)(B)(i)–(ii).

the bond application. (*Id.* at 186, 244.) The BOCC voted to deny the bond application, (*id.*), prompting Plaintiffs to initiate this lawsuit, (*see* Dkt. 1). The operative second amended complaint asserts four causes of action. (*See* Dkt. 37 at 9–21.) Plaintiffs bring segregative effect claims under the Federal and Florida Fair Housing Acts (FHAs) in counts I and III and disparate impact claims under those statutes in counts II and IV. (*Id.*)

**APPLICABLE STANDARDS**

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the

governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes precluding judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." (quotation omitted)). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of*

*Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

The court applies the same analysis to Plaintiffs' Federal and Florida FHA claims. *See Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) ("'The Florida [FHA] contains statutory provisions that are substantively identical to the [Federal FHA].' Accordingly, we apply the same analysis to [the plaintiff's] claims under these two statutes." (quoting *Loren v. Sasser*, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002))); *Alley v. Les Chateaux Condo. Ass'n*, No. 8:10-cv-760-T-33TGW, 2010 WL 4739508, at *3 n.2 (M.D. Fla. Nov. 16, 2010) (applying the same analysis to claims for violations of the Federal and Florida FHAs).

The FHAs protect certain classes of people from discrimination in the sale, rental, and financing of housing. 42 U.S.C. § 3604; *see Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 540 (2015) ("[T]he [Federal] FHA aims to ensure that [government] priorities can be achieved without arbitrarily creating discriminatory effects or perpetuating segregation."). In an FHA case, the plaintiff "has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." *Inclusive Cmtys.*, 576 U.S. at 527 (quoting 24 C.F.R.

§ 100.500(c)(1)). "[A] plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that a defendant's decision has a segregative effect" or that because of Defendant, housing options are "significantly more restrictive for members of a protected group than for persons outside that group." *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, 759 F. App'x 828, 833 (11th Cir. 2018) (alteration adopted) (quoting *Hallmark Devs., Inc. v. Fulton County*, 466 F.3d 1276, 1286 (11th Cir. 2006)); *see* 24 C.F.R. § 100.500(a) ("A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin."). Courts refer to these discriminatory effect categories as segregative effect and disparate impact claims. *See River Cross Land Co. v. Seminole County*, No. 6:18-CV-1646-ACC-LRH, 2021 WL 2291344, at *21 (M.D. Fla. June 4, 2021) ("Segregative[ ]effect claims focus on how a challenged action affects residential segregation in the local community, as opposed to disparate impact claims which focus on the harm done to a racial minority or protected group." (quotation omitted)).

All discriminatory effect cases apply a three-step burden shifting analysis. 24 C.F.R. § 100.500(c). The plaintiff has the initial burden of establishing a prima facie case by proving that "a challenged practice caused or predictably will cause a discriminatory effect." *Id.* If the plaintiff proves a prima facie case, the burden shifts to the defendant to prove that its "challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." *Id.* Finally, if the

defendant satisfies this burden, the plaintiff must prove that the defendant's interest in "the challenged practice could be served by another practice that has a less discriminatory effect." *Id.*

Here, Plaintiffs cannot establish a prima facie case for their segregative effect or disparate impact claims and the court grants summary judgment on that ground. Accordingly, the court declines to address the next steps of the burden shifting analysis, including whether Defendant had substantial, legitimate, and nondiscriminatory interests and whether Plaintiffs can establish that the challenged practice could be served by another practice with a less discriminatory effect. (Dkt. 53 at 20–23.) *See City of Miami v. Bank of Am. Corp.*, 171 F. Supp. 3d 1314, 1320 (S.D. Fla. 2016) (ceasing analysis of disparate impact claims after demonstrating that the plaintiff failed to meet prima facie requirements); *Hous. Invs., Inc. v. City of Clanton*, 68 F. Supp. 2d 1287, 1299 (M.D. Ala. 1999) (ending the disparate impact analysis after concluding that the plaintiffs did not satisfy the first part of the burden shifting analysis); *McCall v. Montgomery Hous., Auth.*, No. 2:14-CV-1113-ECM-SMD, 2019 WL 5777721, at *6 (M.D. Ala. July 31, 2019) (determining that "[b]ecause [the p]laintiff ha[d] not established a prima facie case of discrimination, she [did] not [meet] the burden of proof necessary to defeat [the d]efendants' [m]otion," and not proceeding to step two of the burden shifting analysis), *report and recommendation adopted by* 2019 WL 5755955, at *1 (M.D. Ala. Nov. 5, 2019), *aff'd*, No. 19-14870, 2022 WL 683081 (11th Cir. Mar. 8, 2022). The court also declines to address whether Defendant is entitled to either

legislative immunity or sovereign immunity as to the state law claim.[3] (Dkt. 53 at 23–25; Dkt. 60 at 20–21.) *See McArthur v. Summit Sec.*, No. 3:20-CV-1002 (SRU), 2022 WL 2981612, at *2 (D. Conn. July 28, 2022) (concluding that the court need not decide whether the defendant was entitled to sovereign immunity because the plaintiff failed to state a claim).

## A. Segregative Effect

As mentioned above, "[s]egregative[ ]effect claims focus on how a challenged action affects residential segregation in the local community." *River Cross*, 2021 WL 2291344, at *21. To overcome summary judgment for a segregative effect claim, a plaintiff must show that 1) "a segregated housing pattern based on race" exists "within a specific community," *id.* at *23, and 2) the defendant's practice "create[d], increase[d], reinforce[d], or perpetuate[d]" the segregation, 24 C.F.R. § 100.500(a). To demonstrate that a defendant perpetuated segregated housing patterns,

> the plaintiff must have a thoroughly developed record that shows[: (1)] such indicia of segregation as localized concentrations of minority groups within the municipality[, (2)] comparisons of the racial composition of the areas inside and outside the municipality, showing that minority groups have been excluded from the municipality[,] and [(3)] historical practices of segregation, the effects of which linger in the present.

---

[3] It is unclear that Defendant is entitled to either form of immunity. It is unlikely that Defendant is entitled to legislative immunity. *See Hous. Invs., Inc. v. City of Clanton, Ala.*, 68 F. Supp. 2d 1287, 1296 (M.D. Ala. 1999) (concluding that a city was not entitled to any legislative immunity in a Federal FHA case). As to sovereign immunity on the state law claim, Defendant cites *City of Pompano Beach v. Coral Rock Development Group, LLC*, 402 So. 3d 1037 (Fla. Dist. Ct. App. 2024). That case concluded that a city was entitled to sovereign immunity because the Florida FHA "does not include an express waiver of sovereign immunity" and "[a]bsent an express waiver provision, or unambiguous text permitting claims against governmental entities," such immunities remain in place. *Id.* at 1039. Because the court grants summary judgment for Defendant, the court need not decide whether Defendant is entitled to immunity.

*River Cross*, 2021 WL 2291344, at *31 (alteration adopted and quotation omitted); *accord City of Clanton*, 68 F. Supp. 2d at 1299.

Plaintiffs have "not state[d] a prima facie case because [Plaintiffs do] not attempt to make a showing of historical practices of segregation." *See River Cross*, 2021 WL 2291344, at *31; *cf. Roy v. Bd. of Cnty. Comm'rs Walton Cnty.*, No. 3:06CV95/MCR/EMT, 2007 WL 3345352, at *12 (N.D. Fla. Nov. 9, 2007) (noting that the plaintiffs stated a segregative effect claim where the plaintiffs alleged that "the defendants [we]re perpetuating what ha[d] historically been a racially segregated area"). (Dkt. 60 at 8–13.) While Plaintiffs argue that a segregated housing pattern based on race exists, such a housing pattern is, by itself, insufficient to establish a prima facie case. (*Id.* at 8–10.) Without a showing of historical practices of segregation, housing statistics showing racial disparities "only repeat[] the otherwise unsurprising fact that racial minorities are minorities"; the statistics do "little to support the claim of a segregative effect." *See River Cross*, 2021 WL 2291344, at *31 (quotation omitted) (defining "'perpetuate' [a]s to 'cause to last indefinitely,'" thereby requiring "an increase or strengthening of segregation . . . to establish liability for a segregative effect violation"); *see also City of Clayton*, 68 F. Supp. 2d at 1299. (Dkt. 57 at 8.) The court thus concludes that Defendant is entitled to summary judgment on the segregative effect claims.

Plaintiffs disagree with this conclusion, arguing that they have demonstrated "a localized concentration." (Dkt. 60 at 10–11.) Even so, Plaintiffs do not dispute that they must also have "comparisons of the racial composition of the areas inside and

outside the municipality." *See River Cross*, 2021 WL 2291344, at *31. Nor do Plaintiffs dispute that they must show that West Melbourne "historical[ly] practice[d ]segregation," that those effects "linger in the present," and that Defendant perpetuated that segregation. *See id.* Plaintiffs have failed to satisfy all these requirements. *See Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 513 (9th Cir. 2016) (affirming a district court's grant of summary judgment on a perpetuation of segregation claim because the record demonstrated that affordable housing was already available and any integrative effect of the proposed development was accomplished by the defendant's permitting affordable housing nearby); *Macone v. Town of Wakefield*, 277 F.3d 1, 8 (1st Cir. 2002) (noting that although the plaintiffs prompted the court to "look exclusively to the fact that [the city was] a predominately white community," the plaintiffs presented "no information about historical patterns of racial housing discrimination" in the area, and explaining that "[t]he fact that a community is not racially integrated does not automatically mean that [the court] will find" an FHA violation); *United States v. City of Black Jack*, 508 F.2d 1179, 1186 (8th Cir. 1974) (explaining that a district court must take into account the historical context of a city's action in determining discriminatory effect); *City of Clayton*, 68 F. Supp. 2d at 1301 (noting that a plaintiff "cannot rely on [a] background assumption" of historical practices of discrimination "to justify [the] imposition of liability"); *River Cross*, 2021 WL 2291344, at *32 (explaining that the area at issue "bec[a]me more diverse[,] albeit more slowly," so the plaintiff lacked evidence that the defendant perpetuated segregation). (*See* Dkt. 60 at 10–11.) As such, Plaintiffs cannot

demonstrate that Defendant perpetuated segregation under a segregative effect theory. *See River Cross*, 2021 WL 2291344, at *32 (granting summary judgment on a segregative effect claim to the defendant because the plaintiff lacked evidence that the defendant perpetuated segregation and thus could not state a prima facie case).

Additionally, Plaintiffs' evidence regarding the impact that the development would have regarding combatting segregation "is inherently speculative." *Hallmark Devs.*, 466 F.3d at 1286. Plaintiffs' evidence is based on who can afford certain rental rates and projections based on the "racial composition" of "Plaintiffs' four existing apartment complexes." (Dkt. 50 at 44–45.) Plaintiffs reason that the "racial mix for the [proposed development] would have been very similar" to Plaintiffs' other projects in the area. (*Id.* at 45.) However, "[t]here is no evidence that the[se] statistics . . . bear[] a proven relationship to the actual applicant flow" for the proposed development. *See Hallmark Devs.*, 466 F.3d at 1286 (quotation omitted). Typically, in those "cases in which disparate impact was found . . . , invariably there was a waiting list for affordable housing or a shortage of housing for which only a defined group qualified." *Id.* (collecting cases). However, here, there is no such waiting list. (*See* Dkt. 50.) Plaintiffs do note that there is an alleged shortage of affordable housing. (Dkt. 50 at 45, 48, 53, 62.) Yet "there is no information that any minorities would actually move into" the proposed development. *See Macone*, 277 F.3d at 8 (affirming a grant of summary judgment because the plaintiffs "failed to produce sufficient evidence to establish a prima facie case").

"Without evidence of [Defendant's] perpetuation . . . of segregative effect, [Plaintiffs] cannot state a prima facie case[,] and [Defendant] is entitled to summary judgment on the . . . segregative effect claim[s] on this basis alone." *See River Cross*, 2021 WL 2291344, at *32 (quotation omitted); *see also Boykin v. Gray*, 986 F. Supp. 2d 14, 24 (D.D.C. 2013) (granting summary judgment to the defendants on a segregative effect claim because the plaintiffs failed to establish a prima facie case), *aff'd sub nom. Boykin v. Fenty*, 650 F. App'x 42 (D.C. Cir. 2016); *McCall*, 2019 WL 5777721, at *6 (concluding as to a segregative effect claim that "[b]ecause [the p]laintiff ha[d] not established a prima facie case of discrimination, she [did] not [meet] the burden of proof necessary to defeat [the d]efendants' [m]otion," and thus recommending granting summary judgment for the defendant).

## B. Disparate Impact

As the court previously explained in this case, disparate impact claims require a plaintiff to demonstrate that "a facially neutral policy had a harsher impact on a protected group of individuals, such as a racial minority, even if the effect was unintended." *Atl. Hous. Partners L.L.L.P. v. Brevard County*, No. 6:23-CV-2473-JSS-DCI, 2024 WL 4235770, at *7 (M.D. Fla. Sept. 19, 2024) (quotation omitted); *see Inclusive Cmtys.,* 576 U.S. at 524 ("[A] plaintiff bringing a disparate[ ]impact claim challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." (quotation omitted)). To establish a prima facie showing of disparate impact, a plaintiff must

> (1) show statistically-imbalanced . . . patterns which adversely impact a minority group[,] (2) identify a facially-neutral policy used by [d]efendants[,] (3) allege that such policy was "artificial, arbitrary, and unnecessary[,]" and (4) provide factual allegations that meet the "robust causality requirement" linking the challenged neutral policy to a specific adverse racial or ethnic disparity.

*City of Miami*, 171 F. Supp. 3d at 1320 (quoting *Inclusive Cmtys.*, 576 U.S. at 540–43). As to the causality requirement, a plaintiff must show that the defendant "caused or predictably will cause a discriminatory effect." *Inclusive Cmtys.*, 576 U.S. at 527 (quotation omitted). "If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability." *Id.* "[A] disparate[ ]impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* at 542.

"[A] crucial characteristic of the law of disparate impact . . . is its focus on facially neutral *policies* that systematically exert discriminatory effects within the population to which they apply." *Boykin*, 986 F. Supp. 2d at 20 (citing cases). Here, the facially neutral policy that Plaintiffs now challenge is Defendant's denial of Plaintiffs' bond application. (Dkt. 49 at 17–18; Dkt. 60 at 11–12.) This position is a departure from Plaintiffs' previous argument that the "policy to conduct public hearings to approve the bond financing application" constituted the "facially neutral policy that was used arbitrarily to deny approval of the bond financing application." *Atl. Hous. Partners*, 2024 WL 4235770, at *8. (*Compare* Dkt. 37 at 4–6 (identifying the public hearing as the policy), *with* Dkt. 49 at 17–18 (alleging that the decision to deny

the bond application was the policy), *and* Dkt. 60 at 11–19 (same).)[4]  The court addresses each challenged policy in turn.

There is a "distinction between discrete acts that affect individuals or small groups, and policies that are generally applicable and thus the more appropriate object of disparate impact analysis." *Boykin*, 986 F. Supp. 2d at 20.  For instance, in the employment context, a policy that could be challenged under a disparate impact theory might be one that requires manual laborers to possess a high school diploma and to obtain satisfactory scores on intelligence tests.  *See Griggs v. Duke Power Co.*, 401 U.S. 424, 427–28 (1971).  In the housing context, such a policy might be an initiative to "enforce the housing code aggressively in the city's worst multi-family apartment buildings."  *See 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 677 (D.C. Cir. 2006) (quotation omitted).  However, the decision to deny a single application is "hardly a policy."  *See id.* at 680 (stating that the decision to close a building was not a policy, and analogizing to the employment context where—in the case of "an employer's refusal to hire a single individual based on the results of an allegedly discriminatory test"— an individual "would need to show not that her failure

---

[4] "[P]laintiffs may not raise new claims at the summary judgment stage." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337–38 (11th Cir. 2024) (quotation omitted).  However, Plaintiffs seem to do so here.  The complaint identifies the challenged policy as the hearing required by 26 U.S.C. § 147(f).  (Dkt. 37 at 5 ("On December 5, 2023, the Brevard County Commission (BCC) held a hearing on the [b]ond [f]inancing application (the BCC Hearing) as required by 26 U.S.C. § 147(f) (the Policy)." (quotation omitted)).)  In contrast, in response to Defendant's motion for summary judgment, Plaintiffs identify the "challenged practice" as "Defendant's denial of the [b]ond [a]pplication." (Dkt. 60 at 19.)

to obtain the job disproportionately affected her protected class . . . but rather that the test itself had a disproportionate effect on the protected class").

As mentioned above, this court previously rejected Defendant's argument that "Plaintiffs did not sufficiently identify a facially neutral policy" because "Plaintiffs plausibly identif[ied Defendant's] policy to conduct public hearings to approve the bond financing application as authorized by 26 U.S.C. § 147(f)(2)(A)(i) [a]s a facially neutral policy." *Atl. Hous. Partners*, 2024 WL 4235770, at *8. However, Plaintiffs' departure from their earlier position of identifying the public hearings as the challenged policy necessitates a different analysis, and the court concludes that Defendant's "one-time decision" to deny Plaintiffs' bond application is not "a policy at all." *See Inclusive Cmtys.*, 576 U.S. at 543.[5] The court in *Boykin* reached a similar conclusion. 986 F. Supp. 2d at 21. There, the plaintiffs brought a disparate impact claim based on the defendant's decision to close a homeless shelter. *Id.* However, because the plaintiffs "simply pointed to the loss of ninety beds of shelter housing in one location," rather than demonstrating that "this event was representative of a *general* decrease in the availability of shelter for homeless residents of the city," the court concluded that the plaintiffs "failed to offer evidence that prove[d] the existence of any more general policy . . . of which the closure of [the homeless shelter] was a constituent part." *Id.* Similarly, here, Plaintiffs have not provided evidence "on which a reasonable jury

---

[5] While Plaintiffs assert that a "single decision by a governmental unit can establish a segregative effect claim," they do not maintain that a single decision may establish the policy required for a disparate impact claim. (Dkt. 60 at 8–12.)

could base a finding that the" denial of Plaintiffs' bond application "constituted or was representative of a broader" policy by Defendant. *Id.* at 23. (*See* Dkt. 50.)

Alternatively, if the policy is the practice of holding public hearings,[6] Plaintiffs' claims fail under the causality prong because Plaintiffs have not demonstrated a causal connection between public hearings and the alleged statistical disparity. *See Atl. Hous. Partners*, 2024 WL 4235770, at *7 (granting a motion to dismiss where the complaint did "not contain any facts linking the challenged neutral policy to a specific adverse racial or ethnic disparity"); *see also City of Miami*, 171 F. Supp. 3d at 1320 (dismissing disparate impact claims because the plaintiff failed to allege facts demonstrating a causal connection between the challenged policy and the alleged statistical disparity). Plaintiffs' evidence arguably "demonstrate[s] that Defendant's denial of the [b]ond [a]pplication had a disparate impact on black households that needed affordable housing in the relevant market." (Dkt. 60 at 11 (citing Dkt. 50 at 107–17); *see* Dkt. 49 at 19 (stating that the evidence "demonstrated the causal connection between *the denial of the [b]ond [a]pplication* and the disparate impact on black households compared to white households" (emphasis added)).) While this evidence highlights that "racial imbalance is endemic to affordable housing, as such housing caters to a

---

[6] The court notes that Plaintiffs have seemingly abandoned this claim. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned." (quotation omitted)); *Powell v. Am. Remediation & Env't, Inc.*, 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." (quotation omitted)). (*See* Dkt. 53 at 20–23; Dkt. 60 at 11–19.)

disproportionately higher percentage of racial minorities," it "does not establish the crucial element of causation" between the policy of holding public meetings and the complained-of racial disparity. *See Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, No. 616CV1005ORL37GJK, 2017 WL 3621940, at *7 (M.D. Fla. Aug. 23, 2017), *aff'd*, 759 F. App'x 828 (11th Cir. 2018).

For example, in *Oviedo*, the plaintiffs, a group of professionals—including Plaintiffs Atlantic Housing Partners L.L.L.P. and Concord Management, Ltd.—built an affordable-housing complex. *Id.* at *1. The plaintiffs challenged a policy which differentiated single-family residential properties from multi-family residential properties and set a per-unit water base charge only for the latter, thereby dramatically increasing the water utility rates assessed for the plaintiffs' complex. *Id.* at *3. The court determined that the plaintiffs were unsuccessful in their attempt to establish that the policy had a disparate impact on racial minorities because they drew "the wrong comparison." *Id.* at *6. The court explained that the plaintiffs' evidence demonstrated "that more racial minorities live[d] in [the plaintiffs' complex] than the rest of" the city, but the plaintiffs failed to demonstrate that the challenged policy "affected racial minorities differently than non-minorities." *Id.* at *7. Similarly, here, Plaintiffs have demonstrated that more racial minorities would live in Plaintiffs' affordable housing complex if it were built, but Plaintiffs have failed to demonstrate that the policy of holding public meetings affects racial minorities differently than non-minorities. (*See* Dkt. 50.)

Plaintiffs do not provide evidence "establishing that [Defendant] applies its policy of conducting public hearings to approve private bond financing applications . . . in a manner that adversely impacts a minority group in a statistically unbalanced way." *See Atl. Hous. Partners*, 2024 WL 4235770, at *7; *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218 (11th Cir. 2008) ("[S]imply showing that a few houses are affected by [the policy] does not come close to establishing disparate impact."); *Boykin*, 986 F. Supp. 2d at 22 (noting that "the plaintiffs point[ed] to no evidence . . . in the record—other than the disproportionate representation of minorities in the District's homeless population—to demonstrate their ability to" prove a disproportionate effect). Defendant has approved four prior affordable housing developments for Plaintiffs and provided bond funding for three of those developments.[7] (Dkt. 53-16 at 8, 10.) Accordingly, even if Plaintiffs' evidence were sufficient to demonstrate a disparate impact, it fails to establish a "causal connection between the . . . [p]olicy" of holding public meetings "and the disparate impact." *See Oviedo*, 759 F. App'x at 835.[8]

---

[7] Although neither party explicitly states that these developments went through the same public meeting process, given the Live Local Act and TEFRA, the court presumes that Plaintiffs were previously required to engage in the same process or they would have stated otherwise. (*See* Dkt. 53-16 at 8, 10.)

[8] "It is worth noting that Plaintiffs may have satisfied their burden with statistical evidence demonstrating a comparison between:" (1) x% of racial minorities deprived of housing after public meetings and (2) y% of non-minorities deprived of housing after public meetings. *See Oviedo*, 2017 WL 3621940, at *7 n.19; *see also Schwarz*, 544 F.3d at 1217 (providing an example of a formula by which the plaintiffs could have made a prima facie case of disparate impact); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 577 (2d Cir. 2003) (providing another such example).

Thus, Defendant is entitled to summary judgment on Plaintiffs' disparate impact claims. *See Schwarz*, 544 F.3d at 1218 (granting summary judgment on a disparate impact claim where the plaintiff did not present evidence that the policy treated handicapped persons differently from non-handicapped persons); *Boykin*, 986 F. Supp. 2d at 21–22 (granting summary judgment to the defendant because the plaintiffs "failed to offer evidence that prove[d] the existence of any more general policy or practice" and instead demonstrated "only that a very small subset of the homeless population was deprived of housing in one location"); *Oviedo*, 2017 WL 3621940, at *7 (granting summary judgment as to disparate impact claims because the plaintiffs had not carried their burden of establishing a prima facie case of disparate impact).

## CONCLUSION

Accordingly:

1. Defendant's motion for summary judgment (Dkt. 53) is **GRANTED**.

2. Plaintiffs' motion for partial summary judgment (Dkt. 49) is **DENIED**.

3. Defendant's motions in limine (Dkts. 54, 55, 69) are **DENIED as moot**.

4. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close this case.

**ORDERED** in Orlando, Florida, on January 13, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record